# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No.: 23-cv-00131-JSR |
| -against- | |
| ANDREW DEFRANCESCO, MARLIO MAURICIO DIAZ CARDONA, CARLOS FELIPE REZK, NIKOLA FAUKOVIC, and CATHERINE DEFRANCESCO, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF ANDREW DEFRANCESCO'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE COMPLAINT

MILBANK LLP
George S. Canellos
Adam J. Fee
Jeremy B. Butt
55 Hudson Yards
New York, NY 10001 /
2029 Century Park East, 33rd Fl.
Los Angeles, CA 90067
Telephone: (212) 530-5000
gcanellos@milbank.com
afee@milbank.com
jbutt@milbank.com
*Counsel for Defendant Andrew DeFrancesco*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

    I.      ANDREW DEFRANCESCO & COOL HOLDINGS., INC. ................................. 3

    II.     THE SEC's ALLEGATIONS ............................................................................. 4

ARGUMENT ........................................................................................................................ 6

    III.    LEGAL STANDARD .......................................................................................... 6

    IV.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST
          DEFRANCESCO FOR SECURITIES FRAUD ...................................................... 7

        A.     The Complaint fails to allege that statements about Cool's goals
            were anything more than corporate puffery or sincere, reasonable
            opinions. ................................................................................................ 8

        B.     The Complaint fails to allege misstatements in the risk disclosures
            because the harm they warned of had not materialized. ........................... 13

        C.     The Complaint fails to allege that DeFrancesco made or
            disseminated any allegedly misleading statements in the Articles. ........... 15

        D.     The Complaint fails to plead the "something extra" necessary for
            scheme liability for any allegedly misleading statements. ........................ 17

CONCLUSION ..................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Alex. Brown & Sons Inc. v. Marine Midland Banks, Inc.*,
    1997 WL 97837, at *7 (S.D.N.Y. Mar. 6, 1997) ....................................1

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F.Supp.3d 737, 757–58 (S.D.N.Y. 2018) ........................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ...................................................................8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87, 98. 99 (2d Cir. 2007)..........................................7, 16, 17

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
    No. 08 Civ. 11278 (DLC), 2009 WL 4823923, at *13 (S.D.N.Y. Dec. 14,
    2009) ...................................................................................................9

*Basic Inc. v. Levinson*,
    485 U.S. 224, 231-32 (1988) ............................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 545, 555 (2007)....................................................................6

*Chapman v. Mueller Water Prod., Inc.*,
    466 F.Supp.3d 382, 406 n.6 (S.D.N.Y. 2020)....................................13

*Cortina v. Anavex Life Scis. Corp.*,
    No. 15 Civ. 10162 (JMF), 2016 WL 7480415, at *4-5 (S.D.N.Y. Dec. 29,
    2016) ...................................................................................15, 16, 17

*In re Exxon Mobil Corp. Sec. Litig.*,
    500 F.3d 189, 197 (3d Cir. 2007)........................................................7

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
    843 F.3d 1257, 1272-73 (11th Cir. 2016) ...............................15, 16, 18

*In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) ..................9

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135, 141, 142 (2011)................................................5, 12, 15, 16

*Kalnit v. Eicher*,
    264 F.3d 131, 138 (2d Cir. 2001)........................................................6

*In re Lehman Bros. Sec. & Erisa Litig.*,
    131 F. Supp. 3d 241, 251 (S.D.N.Y. 2015)..........................................8

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
  2017 WL 1378413, at \*3 (S.D.N.Y. Apr. 7, 2017)............................................................1

*Lorenzo v. Sec. & Exch. Comm'n*,
  139 S. Ct. 1094, 1100-01 (2019)................................................................................15, 16

*Malouf v. Sec. & Exch. Comm'n*,
  933 F.3d 1248, 1260 (10th Cir. 2019) ............................................................................15

*McIntire v. China MediaExpress Holdings, Inc.*,
  927 F.Supp.2d 105, 137-38 (S.D.N.Y. 2013) ................................................................15

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89, 95 (2d Cir. 2007)..........................................................................................6

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175, 187, 189 (2015) ..........................................................................9, 13, 17

*Puddu v. 6D Glob. Techs., Inc.*,
  No. 15 Civ. 8061 (AJN), 2021 WL 1198566, at \*9 (S.D.N.Y. Mar. 30, 2021)............17, 18

*Rich v. Maidstone Fin., Inc.*,
  No. 98 Civ. 2569 (DAB), 2002 WL 31867724, at \*10 (S.D.N.Y. Dec. 20,
  2002) ...................................................................................................................................6

*Rombach v. Chang*,
  355 F.3d 164, 171, 174 (2d Cir. 2004) ........................................................................7, 9

*Ross v. Bolton*,
  904 F.2d 819, 823 (2d Cir. 19 ..........................................................................................6

*Schiro v. Cemex, S.A.B. de C.V.*,
  396 F.Supp.3d 283, 298 (S.D.N.Y. 2019) ........................................................................8

*Scone Invs., L.P. v. Am. Third Mkt. Corp.*,
  No. 97 Civ. 3802 (SAS), 1998 WL 205338, at \*4 (S.D.N.Y. Apr. 28, 1998) ..................7

*Sec. & Exch. Comm'n v. Collins & Aikman Corp.*,
  524 F.Supp.2d 477, 484  (S.D.N.Y. 2007)........................................................................6

*Sec. & Exch. Comm'n v. Lee*,
  720 F.Supp.2d 305, 325 (S.D.N.Y. 2010)......................................................................17

*Sec. & Exch. Comm'n v. Monarch Funding Corp.*,
  192 F.3d 295, 308 (2d Cir. 1999)......................................................................................7

*Sec. & Exch. Comm'n v. Pentagon Cap. Mgmt. PLC*,
  725 F.3d 279, 285 (2d Cir. 2013)......................................................................................7

*Sec. & Exch. Comm'n v. Thompson*,
  238 F.Supp.3d 575, 590 (S.D.N.Y. 2017) ..............................................................19

*Sec. & Exch. Comm'n v. Stoker*,
  865 F.Supp.2d 457, 465–66  (S.D.N.Y. 2012) ....................................................5, 15

*Sec. & Exch. Comm'n v. Rio Tinto plc*,
  41 F.4th 47, 49, 52, 54 (2d Cir. 2022) ............................................................17, 18

*Shreiber v. Synacor, Inc*,
  832 F.App'x 54, 57 (2d Cir. 2020) .........................................................................9

*In re Skechers USA, Inc. Sec. Litig.*,
  444 F.Supp.3d 498, 512 (S.D.N.Y. 2020) ...............................................................9

*Steinberg v. PRT Grp., Inc.*,
  88 F.Supp.2d 294, 311 (S.D.N.Y. 2000)................................................................11

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94, 100 (2d Cir. 2015).............................................................................6

*T.H.C., Inc. v. Fortune Petroleum Corp.*,
  No. 96 Civ. 2690 (DAB), 1999 WL 182593, *3 (S.D.N.Y. Mar. 31, 1999) ...........6

*Tongue v. Sanofi*,
  816 F.3d 199, 206 n.6, 207, 211-12, 214 (2d Cir. 2016) .............................7, 12, 16

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  No. 20 Civ. 08585 (LJL), 2022 WL 4085677, at *58 (S.D.N.Y. Sept. 2, 2022) ...................18

*Ulbricht v. Ternium S.A.*,
  No. 18 Civ. 6801 (PKC), 2020 WL 5517313 *9 (E.D.N.Y. Sept. 14, 2020) ........13

*Villare v. Abiomed, Inc.*,
  No. 19 Civ. 7319 (ER), 2021 WL 4311749 *13-14 (S.D.N.Y. Sept. 21, 2021).......................8

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223, 250 (2d Cir. 2016)..........................................................................12

*Williams v. Globus Med., Inc.*,
  869 F.3d 235, 242 (3d Cir. 2017)....................................................................13, 14

*Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC*,
  474 F.Supp.2d 505, 515–16 (S.D.N.Y. 2007)........................................................77

**Statutes and Regulations**

15 U.S. Code § 78l.................................................................................................3

15 U.S.C. § 78m(d) .............................................................................................1

15 U.S.C. § 78p(a) ..............................................................................................1

15 U.S.C. §§ 77q(a)(1), (2), and (3), (b) ................................................... *passim*

15 U.S. Code § 77e(a), (c) ..................................................................................1

15 U.S. Code § 78j ..........................................................................5, 11, 12, 13, 19

17 CFR § 240.10b5-1 ................................................................................ *passim*

17 CFR § 240.13d-1(a) .......................................................................................1

17 CFR § 240.16a-3 ............................................................................................1

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6).................................................................................1, 6

Andrew DeFrancesco ("<u>DeFrancesco</u>") respectfully submits this memorandum of law in support of his motion, pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss Counts One and Two of the complaint ("<u>Complaint</u>") filed in this action by the Securities and Exchange Commission ("<u>SEC</u>").

## <u>PRELIMINARY STATEMENT</u>

DeFrancesco served as chairman of the board for Cool Holdings, Inc. ("<u>Cool</u>"), a company that owned and operated a chain of retail electronics stores, from its March through December 2018. The SEC alleges that DeFrancesco was one of five defendants who engaged in a scheme to mislead investors about Cool's operations through misstatements in certain Cool SEC filings (the "<u>Filings</u>") and marketing campaign articles (the "<u>Articles</u>") while he disposed of Cool shares held by entities owned by or beneficially controlled for DeFrancesco's ex-wife, mother, sister, and children. The SEC alleges that DeFrancesco violated (i) Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder (Count One), and (ii) Section 17(a) of the Securities Act of 1933 (Count Two).[1] These claims should be dismissed.

*First*, the Complaint fails to plausibly allege that the Filings contain an actionable misstatement or omission. The SEC has focused on Cool's statement that it is "[o]ur goal in the next three (3) years to expand our network . . . to 200 locations" in North and Latin America, but this statement is immaterial as a matter of law. It is well settled that a "generalized" "statement[]

---

[1]     The Complaint also alleges that DeFrancesco violated Sections 5(a) and 5(c) of the Securities Act (Count Four); Section 13(d) of the Exchange Act and Rule 13d-1(a) thereunder (Count Five); and (v) Section 16(a) of the Exchange Act and Rule 16a-3 (Count Six). This Motion to Dismiss Counts One and Two tolls DeFrancesco's time to answer the remaining Counts in the Complaint. *See Alex. Brown & Sons Inc. v. Marine Midland Banks, Inc.*, 1997 WL 97837, at *7 (S.D.N.Y. Mar. 6, 1997) (A "partial motion to dismiss extends defendant's time to answer all claims") (internal citation and quotation marks omitted); *Lombardo v. Dr. Seuss Enterprises, L.P.*, 2017 WL 1378413, at *3 (S.D.N.Y. Apr. 7, 2017) (same).

of corporate optimism" with respect to company "goals" is non-actionable puffery. *See infra* at IV.A (collecting cases). Nevertheless, the SEC alleges that this statement was misleading because it omitted information about Cool's precarious financial condition and strained relationship with its principal supplier, Apple, Inc. ("Apple"). The SEC's allegations cannot be squared with the Filings themselves, which thoroughly (and accurately) disclosed Cool's financial condition. In any event, the SEC is conflating fraudulent omissions with Cool's reasonable and legally protected optimism about the business. Indeed, as the SEC alleges in another part of the Complaint, Cool did in fact expand despite its allegedly strained relationship with Apple and financial condition.

*Second*, the Complaint fails to plausibly allege that DeFrancesco made or disseminated the Articles, which is required to plead a violation of Section 10b-5 and Sections 17(a)(1) and (3), respectively. The SEC's allegations related to the Articles are simply that DeFrancesco (i) was copied on an email in which Carlos Felipe Rezk, a co-defendant and corporate officer of Cool, approved the final Articles, and (ii) paid for the Articles. These allegations fall far short of establishing that DeFrancesco had ultimate authority over the disclosures or otherwise disseminated them. In fact, the SEC fails to allege that he even **read** the Articles.

*Finally*, the scheme liability claims fail for the independent reason that the SEC has failed to allege an overtly deceptive act. Courts have consistently held that scheme liability cannot be premised on alleged misrepresentations or omissions that form the basis of a Rule 10b-5 claim. The Complaint spins the publication of the Articles as a scheme to defraud investors, but on its face provides factual allegations that show nothing more than that DeFrancesco, as an investor in Cool, contributed funding for an awareness campaign that expressed optimism about the condition of Cool's business. Nothing about the campaign is alleged to be deceptive or unlawful beyond the purported misrepresentations in the Articles themselves.

**BACKGROUND**

## I.     ANDREW DEFRANCESCO & COOL HOLDINGS., INC.

DeFrancesco is a 52-year-old Canadian citizen living in Miami Beach, Florida with decades of experience in capital markets and managing public and private companies, who has never been the subject of a professional disciplinary proceeding and has never been the subject or target of a criminal investigation. He earned his bachelor's degree from the University of Western Ontario in 2001. DeFrancesco has held executive positions in the energy, hospitality, retail, and consumer package goods sectors.

During the relevant period in the Complaint, DeFrancesco served as the chairman of the Board of Directors of Cool, which owns and operates a chain of electronics retail stores across the United States and Latin America. Complaint ¶¶ 21, 28. DeFrancesco is not alleged to have ever worked as an officer or employee at Cool, and the Complaint does not allege that DeFrancesco was involved in running Cool's day-to-day operations. Cool became a public company in March 2018 through a merger between Cooltech, Inc., a private company, InfoSonics, Inc., a Nasdaq-listed public company. *Id.* ¶ 27. Cool's common stock traded on Nasdaq and was registered pursuant to Section 12(b) of the Exchange Act. *Id.*

Cool's stores, which operated under the name OneClick, sold Apple and Apple-approved products and accessories in the United States and Latin America. *Id.* ¶ 28. Apple authorized Cool as an official reseller of Apple products. *Id.* ¶ 90. Cool began retail operations in or about October 2016, when Cool purchased four OneClick stores—two in the United States, and two in Argentina. *Id.* ¶ 52. By August of 2018, Cool had expanded to nine stores. *Id.* ¶ 89. At this point, Cool purchased a chain of seven OneClick stores in the Dominican Republic, increasing its retail footprint to sixteen stores. *Id.* As of January 2022, Cool—now called Simply, Inc.—had expanded

its retail footprint to 53 stores across seventeen states with over 350 full-time employees. Butt Decl., Ex. 1 at 2–3 (Simply Inc., Annual Report (Form 10-K) (Apr. 22, 2022)).

## II.     THE SEC's ALLEGATIONS

The Complaint alleges that the defendants engaged in a fraudulent "pump and dump" scheme effected by (1) misleading statements in Cool's Filings and articles published as part of an awareness campaign funded by DeFrancesco; and (2) the purchase and sale of Cool securities by certain entities owned by DeFrancesco's ex-wife,[2] mother, or sister ("Investor Entities").

***Statements in Cool's Public Filings.***  The Complaint identifies three statements from Cool's May 21, 2018 10-Q and Cool's August 14, 2018 10-Q alleged to be false or misleading. *Id.* ¶ 97.  One is a statement about Cool's goal to expand its business into the future, and the remaining two statements are risk disclosures about (i) Cool's intended expansion, and (ii) Cool's dependence on its relationship with Apple:

A. Our goal in the next three (3) years is to expand our network of OneClick stores to 200 locations in Latin America, the U.S. and Canada to become one of Apple's largest retail partners. We expect that our growth will come from a combination of organic expansion on a store-by-store basis, as well as external acquisitions.

B. [T]he growth of our business is highly dependent upon our relationship with Apple in providing us with the licenses and approvals necessary to expand our footprint into various countries and regions around the world. Apple has very strict performance standards and guidelines that we must achieve and adhere to in order to be successful and continue to receive their support. Consequently, any deterioration of our performance or failure to adhere to their guidelines could jeopardize our strategy and adversely affect our financial performance.

C. Our sales and profitability depend in part upon opening new stores [selling Apple products] and operating them profitably . . . . If we fail to manage new store openings in a timely and cost-efficient manner, our growth or profits may decrease.

---

[2] DeFrancesco's ex-wife, Catherine DeFrancesco, is a defendant in this action.

*Id.* ¶ 97. These statements were incorporated by reference into Cool's 2018 Registration Statement. *Id.* ¶ 98. The Complaint alleges that these statements were materially misleading because Cool's Filings did not disclose its financial condition and the fact that Apple had not yet approved its expansion plans. *Id.* ¶ 99.

**Statements in Awareness Campaign Materials.** The Complaint alleges that DeFrancesco hired a marketer who authored a series of articles about Cool that contained materially false or misleading statements about Cool's operations and revenue, including misrepresenting that OneClick stores averaged $3,750 of revenue per square foot. *Id.* ¶¶ 131, 133–34. DeFrancesco is alleged to have paid for the Articles, and to have been copied on an email chain requesting approval of the Articles. *Id.* ¶¶ 129, 140. The Complaint alleges that the Articles contained a false disclaimer that Cool had paid for the awareness campaign, when it was paid for by DeFrancesco. *Id.* ¶ 157. The Complaint also alleges that DeFrancesco paid for the campaign as a loan to Cool. *Id.* ¶¶ 140, 160–161.

**Purchases and Sales of Cool Shares.** The Complaint alleges that DeFrancesco was the beneficial owner of shares of Cool stock held by the Investor Entities. *Id.* ¶¶ 41, 103–126. According to the Complaint, while the awareness campaign was ongoing, DeFrancesco surreptitiously sold Cool shares through the Investor Entities. *Id.* ¶ 170. The Complaint alleges that by concealing his beneficial ownership of Cool shares, DeFrancesco failed to disclose his ownership stake in Cool in public filings, as he was required to do by law. *Id.* ¶¶ 125–26. The Complaint also alleges that because of DeFrancesco's concealed beneficial ownership, certain Cool Filings were false or misleading as they did not describe transactions with the Investor Entities as being with related parties. *Id.* ¶¶ 115, 120.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (alteration in original). Although a court accepts well-pled allegations on their face, it should not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.) (alteration in original) (internal citation and quotation marks omitted).

Securities fraud claims must satisfy Rule 9(b)'s heightened pleading requirement that the circumstances constituting fraud be stated with particularity. *Kalnit v. Eicher*, 264 F.3d 131, 138 (2d Cir. 2001); *Sec. & Exch. Comm'n v. Collins & Aikman Corp.*, 524 F.Supp.2d 477, 484 (S.D.N.Y. 2007) (citations omitted). "The particularity requirement contained in Rule 9(b) is substantial." *Rich v. Maidstone Fin., Inc.,* No. 98 Civ. 2569 (DAB), 2002 WL 31867724, at *10 (S.D.N.Y. Dec. 20, 2002). It serves to safeguard against "improvident charges of wrongdoing" that can cause irreparable harm to a defendant's reputation. *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir. 1990). "Allegations that are conclusory or unsupported by factual assertions are insufficient" to meet the pleading requirements of Rule 9(b). *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Where, as here, a complaint asserts claims against more than one defendant, "[c]ourts are especially vigilant in applying Rule 9(b)." *T.H.C., Inc. v. Fortune Petroleum Corp.*, No. 96 Civ. 2690 (DAB), 1999 WL 182593, at *3 (S.D.N.Y. Mar. 31, 1999).

The complaint cannot "clump[] [defendants] together in vague allegations" but rather must "identify[] the nature of each defendant's participation in the fraud." *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, No. 97 Civ. 3802 (SAS), 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998).[3]

In deciding a motion to dismiss, the Court is not limited to the face of the complaint, but "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI*, 493 F.3d at 98; *see also Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC*, 474 F.Supp.2d 505, 515–16 (S.D.N.Y. 2007). "Where a document is referenced in a complaint, the documents control and [the] Court need not accept as true the allegations in the . . . complaint." *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (internal quotations omitted).

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFRANCESCO FOR SECURITIES FRAUD

To state a claim for fraud under Section 10(b) and Rule 10b-5, the SEC must plead with particularity that each defendant made or disseminated a material misrepresentation or omitted material information when under a duty to speak, with scienter, in connection with the purchase or sale of securities. *See Sec. & Exch. Comm'n v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999). The elements of a securities fraud claim under Section 17(a) "are the same as Section 10(b) and Rule 10b–5," except that Section 17(a)(2) and (3) require proof of negligence rather than scienter. *Sec. & Exch. Comm'n v. Pentagon Cap. Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013).

---

[3]    The Rule 9(b) heightened pleading standard applies to claims even where a plaintiff need only plead negligence to proceed, so long as the claims rely upon averments of fraud. *See, e.g.*, *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007) ("[I]f a claim not otherwise requiring proof of scienter nonetheless sounds in fraud, then Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies."); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (similar).

<u>The Complaint fails to allege that statements about Cool's goals were anything</u>
       <u>more than corporate puffery or sincere, reasonable opinions.</u>

Cool's statements about its "goal" to "become one of Apple's largest retail partners" by increasing its store count within three years and its "expect[ation]" of expanding through natural growth and acquisitions are non-actionable for at least three reasons.  *First*, and most fundamentally, the SEC does not allege that these were not, in fact, Cool's goals and expectations. *See In re Lehman Bros. Sec. & Erisa Litig.*, 131 F. Supp. 3d 241, 251 (S.D.N.Y. 2015) (Plaintiff must plead "facts that, if true, would be sufficient to show that the statement is, in fact, false.").  *Second*, Cool's goal to become one of Apple's largest retail partners is quintessential corporate puffery. *See, e.g., Schiro v. Cemex, S.A.B. de C.V.*, 396 F.Supp.3d 283, 298 (S.D.N.Y. 2019) (describing statements as "classic puffery" because they used "explicitly aspirational language (*e.g.*, 'committed to'; 'tr[ies] to ensure'), thus unmistakably signaling that they were statements about goals"); *Villare v. Abiomed, Inc.*, No. 19 Civ. 7319 (ER), 2021 WL 4311749, at *13–14 (S.D.N.Y. Sept. 21, 2021) (finding a statement that Defendant's "goal . . . to remain one of the fastest-growing, most profitable med[-]tech companies in the market" was non-actionable puffery); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F.Supp.3d 737, 757–58 (S.D.N.Y. 2018) (finding that statements that the company had "made remarkable progress towards our stated goal of advancing our expanding pipeline towards commercialization," was "confident about and prepared for what lays ahead," was "'proud' to be 'on track to have these products reach the market in 2016,'" and was "confident in these products and our overall commercialization strategy," were non-actionable puffery because "[s]uch statements do no more than place a 'positive spin on [certain] developments'").  The securities laws do not forbid a company from setting goals—even lofty goals—about their vision for its business in the future.  "People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data

indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage." *Rombach*, 355 F.3d at 174; *see also In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, No. 08 Civ. 11278 (DLC), 2009 WL 4823923, at *13 (S.D.N.Y. Dec. 14, 2009) ("[A] good-faith statement that ANZ was 'on track' to achieve some goal does not serve as a guarantee that the goal will indeed be achieved.").

*Third,* even assuming Cool's goal to expand to "200 locations" within three years takes the disclosure out of the realm of corporate puffery—and it does not—the statement is nonetheless a non-actionable opinion. Corporate expectations concerning future performance or growth are statements of opinion. *See Shreiber v. Synacor, Inc*, 832 F.App'x 54, 57 (2d Cir. 2020) ("Synacor's expectations and projections for the future[] were quintessential opinion statements about Synacor's future earnings and revenue goals."). The Supreme Court has made clear that it "is no small task" to establish liability for opinion statements. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187 (2015). Company expectations attract Section 10(b) liability only "if they are worded as guarantees or are supported by specific statements of fact, or if the speaker does not genuinely or reasonably believe them." *In re Skechers USA, Inc. Sec. Litig.*, 444 F.Supp.3d 498, 512 (S.D.N.Y. 2020) (quoting *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998)). Because "[a] reasonable investor does not expect that every fact known to an issuer supports its opinion," an opinion is "not misleading simply because the issuer knows, but fails to disclose, some fact cutting the other way." *Omnicare*, 575 U.S. at 176. The dispositive inquiry is whether the statement is "misleading to a reasonable person reading the statement fairly and in context." *Id.* at 194.

The Complaint does not allege any particularized facts supporting that Cool did not genuinely hold its goals and expectations or that the facts at the time did not fairly align with its

stated opinion.  In fact, the Complaint itself supports management's reasonable belief that Cool would expand its retail operations because Cool did in fact expand.  In August 2018, Cool acquired a chain of seven OneClick stores in the Dominican Republic, nearly doubling its retail footprint. Complaint ¶ 89.

The Complaint relies on correspondence between Apple and Cool to allege that management's expansion plans were unrealistic, but those communications reveal nothing more than standard day-to-day troubleshooting, principally on late payments and corresponding inventory shortages.  *See, e.g.*, Butt Decl. Ex. 2 at 0708[4] ("My message to you is as follows.  We have to ensure that all stores have consistent inventory, that invoices are paid on time.");  *id.* Ex. 3 at 0725 ("Credit Line utilization at 90% or 100% with multiple credit halts, affecting supply and therefore performance.").   And the documents the Complaint incorporates reveal that Cool's management and board of directors, including DeFrancesco, had ample basis to believe that these circumstances would resolve.  As stated in Cool's 10-Q for the quarter ending June 30, 2018—the same filing the Complaint alleges contains misleading statements—"[d]uring the quarter ended June 30, 2018, we raised $3.6 million in a sale of stock.  We are currently formulating plans to convert most of our currently outstanding debt to equity.  In addition, we are planning an additional offering of stock which we anticipate completing during the quarter ending September 30, 2018." Butt Decl. Ex. 4 at 4322.  By the time this fundraising was complete in June 2018, Cool was already "in the final steps of normalizing our inventory position."  Butt Decl. Ex. 5 at 1342.  This fundraising was expressly intended to "optimize the operation of [Cool's] current stores."  *Id.*

---

[4] Pincites for Exhibits 2–7 are to the last four digits of the Bates stamps which begin with "SEC_LIT_EPROD."

These actions bore fruit as reflected in the very documents that the SEC selectively quotes in the Complaint. Cool's 2018 10-K disclosed a significant decrease in its accounts payable relative to the end of 2017. Butt. Decl. Ex. 6 at F-4. In August of 2018, Jorge Velez of Apple wrote, "my visit to the stores in Argentina was generally positive. I saw the stores are much better and with inventory. We are improving." Butt. Decl. Ex. 2 at 0935. DeFrancesco had every basis to believe that a forthcoming infusion of liquidity would allow Cool to resolve its inventory supply issues, thus improving the performance of its stores and Cool's relationship with Apple, allowing for further expansion. In fact, Defendant Rezk expressed this exact belief in an internal May 2018 email, writing, "[o]nce we are current and have inventory, etc [sic] we will be ok." Butt Decl. Ex. 7 at 8945. DeFrancesco responded to this message by stating that he planned to contribute additional capital to Cool, and, "I'm working on a $2.5 to $4m overall plan for inventory." *Id.* at 8944–45.

The Complaint alleges that, despite the company's ongoing capital infusions, Cool's projections were materially misleading because Apple had voiced concern about Cool stores hitting agreed-upon business plan metrics, paused Cool's Latin American expansion, and had not yet licensed Cool to operate in Canada. Complaint ¶ 99. These allegations are irrelevant. *First*, the fact that Apple had not yet approved Cool to expand does not render statements about Cool's goals for expansion misleading, as the Complaint does not allege that Apple would never approve Cool to expand. *See Steinberg v. PRT Grp., Inc.*, 88 F.Supp.2d 294, 311 (S.D.N.Y. 2000) ("In other words, the 'fact' that these clients did not award Y2K business to PRT would not mean that PRT would obtain *no* future Y2K business whatsoever.") (emphasis in original). *Second*, interim concerns do not render optimistic statements misleading. In *Tongue v. Sanofi*, the Second Circuit affirmed the dismissal of a complaint alleging that optimistic statements about receiving FDA

approval for a treatment were misleading because the FDA had repeatedly expressed "grave concern" about "troublesome design issues and the presence of bias" in the studies supporting approval. 816 F.3d 199, 206, 207, 214 (2d Cir. 2016). The Court reasoned that "dialogue [with the FDA] was ongoing" and thus the FDA's "interim, albeit repeated, concerns" "did not prevent Defendants from expressing optimism, even exceptional optimism, about the likelihood of drug approval." *Id.* at 211–12.

The Second Circuit's reasoning applies with equal force here. Nowhere in the Complaint does the SEC allege that Apple contemplated permanently blocking Cool's Latin American expansion, or that Apple would refuse to license Cool's potential Canadian stores in the future. The emails the Complaint relies on to allege "the precarious status of Cool's critical relationship with Apple" demonstrate nothing more than an "ongoing dialogue." *Compare* Complaint ¶ 95 ("For us to re-authorize an expansion with One-Click we need this to start happening in a consistent way for a reasonable time and in all stores that already operate in Latin America."), *with* Butt Decl. Ex. 2 at 0708 ("We want One Click to meet its objectives and be more relevant. In Argentina we saw progress."). At most, the Complaint alleges the very "interim, albeit repeated, concerns" the Second Circuit found insufficient.

The context of Cool's statements about its "goal" to expand further undermines any notion that they were misleading. "The test for whether a statement is materially misleading . . . is not whether the statement is misleading in and of itself, but 'whether the defendants' representations, *taken together and in context*, would have misled a reasonable investor.'" *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016) (emphasis in original). The SEC alleges that the statements in Cool's SEC Filings about its expansion goals were materially misleading as "Cool was unprofitable and had been continually underfunded with dire cash positions and

financing prospects." Complaint ¶ 99. Although *Omnicare* makes clear that issuers have no obligation to disclose facts "cutting the other way" from opinions expressed in their public filings, 575 U.S. at 189, the SEC ignores that the documents containing these statements fully disclosed Cool's financial position in its balance sheets, P&L statement, and statements of cash flows. Butt Decl. Ex. 4 at 4301–03 (Cool Holdings, Inc., Quarterly Report (Form 10-Q) (Aug. 14, 2018)). Moreover, Cool specifically disclosed as a risk factor that "[w]e reported a net loss for the six months ended June 30, 2018 and for the full year 2017. If we are unable to achieve sustained profitability, our business may not be financially viable." *Id.* at 4324. In sum, Cool's statement about its goal and expectations for growth cannot possibly have been "viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988).

B.  The Complaint fails to allege misstatements in the risk disclosures because the harm they warned of had not materialized.

The SEC also alleges that two risk factors in Cool's 10-Qs were misleading. Complaint ¶¶ 97–99. When assessing risk factors in public filings, the key question is whether the *harm* identified in the risk factor has already occurred, not whether the factual predicate that may bring about the harm has occurred. *See, e.g.*, *Chapman v. Mueller Water Prod., Inc.*, 466 F.Supp.3d 382, 406 n.6 (S.D.N.Y. 2020) (finding that a risk factor warning of product defects in new products was not rendered misleading by undisclosed product failures when lost revenue, warranty expenses, and harm to the defendant's reputation had not yet occurred); *Ulbricht v. Ternium S.A.*, No. 18 Civ. 6801 (PKC), 2020 WL 5517313, at *9 (E.D.N.Y. Sept. 14, 2020) (finding that a risk factor warning of political corruption was not rendered misleading by an undisclosed bribery scheme when the defendant's share price did not drop until the scheme became public); *accord Williams v. Globus Med., Inc.,* 869 F.3d 235, 242 (3d Cir. 2017) (finding that a risk factor warning

of the effect on profitability from loss of distributors was not rendered misleading by an undisclosed decision to end a distributor relationship when sales had not yet dropped).

Here, the SEC has not plausibly alleged that the harm discussed in these risk factors had already occurred. The risk factors warn, "[i]f we fail to manage new store openings in a timely and cost-efficient manner, our growth or profits may decrease," and, "any deterioration of our performance or failure to adhere to [Apple's] guidelines could jeopardize our strategy and adversely affect our financial performance." Complaint ¶ 97. Nowhere does the Complaint allege that Apple even hinted at ending its relationship with Cool or permanently refusing to approve further expansion. At most, the Complaint alleges, "Apple had halted Cool's Latin American expansion by January 2018, and this halt remained in effect." *Id.* ¶ 99. But this halt was not alleged to be permanent,[5] and the Complaint outlines Apple's terms for re-authorizing expansion. *Id.* ¶ 95. DeFrancesco reasonably believed he could meet these terms. *See supra* at IV.A. Absent allegations that Apple would never allow further expansion, the SEC cannot show that Cool's disclosed risk factors or expansion plans were materially false or misleading. Moreover, Cool's 2018 10-K shows that (i) Cool was expanding per its strategy, (ii) its gross profits were increasing while its cost of sales as a percent of net sales was decreasing, and (iii) its total liabilities—and specifically accounts payable—had significantly declined since the end of 2017. Butt Decl. Ex. 6 at 0901, 0935. In sum, there was nothing fraudulent about Cool's risk disclosures, which appropriately and accurately warned investors of risks to the company's operations and the realization of its goals.

---

[5] The statement that the halt "remained in effect" is an admission that the halt was in fact a pause. Complaint ¶ 99.

C.    The Complaint fails to allege that DeFrancesco made or disseminated any allegedly misleading statements in the Articles.

The Complaint fails to allege that DeFrancesco "made" or "disseminated" the statements in the Articles.  These failures are fatal to claims under Rule 10b-5(b) and Rule 10b-5(a) and (c) and Sections 17(a)(1) and (3) based on alleged misstatements, respectively.[6]  Only the "maker" of a false or misleading statement may be liable under Rule 10b-5(b).  *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011);  *McIntire v. China MediaExpress Holdings, Inc.*, 927 F.Supp.2d 105, 137–38 (S.D.N.Y. 2013) (applying *Janus* to Section 10(b)).  The maker of a statement "is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Janus*, 564 U.S. at 142.  In the context of paid promotional articles, only the party who publishes the articles has made the statement under *Janus*. *See Cortina v. Anavex Life Scis. Corp.*, No. 15 Civ. 10162 (JMF), 2016 WL 7480415, at *4 (S.D.N.Y. Dec. 29, 2016) (paid promotional articles were not made by issuer client).  Liability under Sections (a) and (c) of Rule 10b-5, as well as Section 17(a)(1) and (3) of the Securities Act of 1933, may attach when a person or entity disseminates a false or misleading statement.  *See Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1100–01 (2019).[7]

The Complaint does not allege that DeFrancesco had anything close to resembling "ultimate authority" over the statements in the Articles.  There is no allegation that he even *read*, let alone reviewed or approved, the Articles.  The Complaint merely makes conclusory statements

---

[6] This Court has held that *Janus* does not apply to Section 17(a)(2) claims.  *Sec. & Exch. Comm'n v. Stoker*, 865 F.Supp.2d 457, 465–66 (S.D.N.Y. 2012).

[7] Although *Lorenzo* addressed only Rule 10b-5 (a) and (c) of the Exchange Act and Section 17(a)(1) of the Securities Act, courts have since consistently applied *Lorenzo* to claims under 17(a)(3). *See, e.g., Malouf v. Sec. & Exch. Comm'n*, 933 F.3d 1248, 1260 (10th Cir. 2019) (holding that "*Lorenzo . . .* controls on § 17(a)(3)" in light of its similarity to Rule 10b-5(c), which *Lorenzo* expressly covered).

that DeFrancesco "orchestrated" or "executed" a false awareness campaign. Complaint at ¶¶ 4, 127. These threadbare allegations fail to move the needle. *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272 (11th Cir. 2016) (Allegations that defendant "worked in conjunction with stock promoters to promote Galectin's stock, particularly with respect to the timing of articles by the stock promoters and company press releases" were "not sufficient to support a claim under Rule 10b-5(b)"); *see also ATSI*, 493 F.3d at 99.

The only other allegations against DeFrancesco regarding the Articles are that he (i) was copied on emails where Rezk, Cool's chief marketing officer, approved the Articles, and (ii) paid for the campaign. Complaint ¶¶ 24, 141, 157. These allegations are plainly insufficient to support liability under *Janus*. *See Cortina*, 2016 WL 7480415, at *4; *see also In re Galectin*, 843 F.3d at 1272 ("Payment for the promotional articles does not mean that [the payor] is the maker of the statements in the articles."). In fact, the Complaint and email correspondence cited therein copying DeFrancesco support that he did not have ultimate authority over the statements in the Articles. The Complaint alleges that Rezk supplied the promoter with the content of the Articles, including a business presentation and talking points (Complaint ¶¶ 129-132); the promoter drafted the Articles "based on the business marking [*sic*] presentation, along with conversations with Rezk and press releases Rezk sent" (*id.* ¶ 135); the Articles were forwarded to Rezk and Mauricio Diaz, Cool's CEO, for comments (*id.* ¶ 139); Rezk emailed the promoter with edits to the Articles and confirmation for the facts in the business presentation, including the revenue-per-square-foot number (*id.* ¶ 146); and Rezk provided final signoff for the Articles (*id.* ¶ 149). Conspicuously absent from these allegations is any involvement on DeFrancesco's part.

Similarly, there can be no liability under *Lorenzo* as the Complaint does not plausibly allege that DeFrancesco disseminated the Articles. All the Complaint musters is three lines in the

overview section that DeFrancesco "participated in and secretly funded a fraudulent promotional campaign that disseminated [the Articles]." Complaint ¶ 44. These allegations do not meet the heightened pleading requirements of 9(b). *ATSI*, 493 F.3d at 99. At most, the allegations suggest that DeFrancesco "participated" in preparing the articles in some way, but the Second Circuit recently held that *Lorenzo* "did not go so far as to create primary liability for **'participation in the preparation'** of misstatements." *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 54 (2d Cir. 2022) (emphasis added).

Moreover, the Complaint's ensuing description of DeFrancesco's alleged "participation" is nothing more than detailing the back-and-forth between the Articles' author and Rezk described above. Complaint ¶¶ 129-132, 135, 139, 149. At most, these averments could show that DeFrancesco failed to prevent the dissemination of false or misleading information in the Articles. But there can be no scheme liability under Rule 10b-5 or Sections 17(a) when it is alleged "only that [the defendant] failed to prevent misleading statements from being disseminated by others." *Rio Tinto plc*, 41 F.4th at 52. And even if there could, such liability would be inappropriate here, as the Complaint contains no particularized allegation showing that DeFrancesco knew that any facts in the Articles were false or had any basis to believe that Rezk or any other member of management had supplied any inaccurate information to the authors of the Articles. To the contrary, the Complaint makes clear that the authors of the Articles were seeking to ensure their accuracy and that management was fact checking the Articles.

D.    The Complaint fails to plead the "something extra" necessary for scheme liability for any allegedly misleading statements.

To state a claim for scheme liability, "a complaint must include an 'allegation that the defendant (1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud, (3) [with] scienter.'" *Puddu v. 6D Glob. Techs., Inc.*, No. 15 Civ. 8061 (AJN), 2021

WL 1198566, at *9 (S.D.N.Y. Mar. 30, 2021) (quoting *Sec. & Exch. Comm'n v. Lee*, 720 F. Supp. 2d 305, 325 (S.D.N.Y. 2010)). These allegations are subject to the heightened pleading requirements of Rule 9(b). *Id.* "[M]isstatements and omissions can form *part* of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination." *Rio Tinto plc*, 41 F.4th at 49 (emphasis in original). To satisfy this requirement, the plaintiff must show that "defendants performed an inherently deceptive act that was distinct from an alleged misstatement: *i.e.*, sham agreements, sham transactions, sham companies, or undisclosed payments to doctors who appeared independent." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20 Civ. 08585 (LJL), 2022 WL 4085677, at *58 (S.D.N.Y. Sept. 2, 2022).

The Complaint lacks any allegation of an inherently deceptive act outside of the statements in Cool's SEC Filings and in the marketing Articles. That DeFrancesco is alleged to have traded Cool shares around the time of the publication of the Articles is irrelevant, as the SEC has only provided a conclusory allegation that "DeFrancesco. . . knew [the Articles were] materially false and misleading." Complaint ¶ 132; *see also supra* at IV.C. The closest the Complaint comes to pleading an inherently deceptive act is alleging that DeFrancesco "intentionally concealed" that he was funding the Articles because the Articles disclosed that Cool had paid the author. Complaint ¶ 158. But the Complaint undercuts its own allegation. *See* Complaint ¶ 140 (stating DeFrancesco represented he would pay the publisher and "take it back out of the financing."); ¶ 160 (characterizing the payment to the publisher as a "loan" to Cool from one of the Investor Entities).

Even assuming the Complaint sufficiently alleged that DeFrancesco paid for the Articles—and it does not—DeFrancesco had no duty to disclose that fact. "Under § 17(b) of the Securities Act, the duty to disclose promotional payments lies with the parties that receive the payments for

promotional activities." *In re Galectin*, 843 F.3d at 1272–73; *accord Cortina,* 2016 WL 7480415, at *5 (finding liability under Section 17(b) only for publishers of statements). Rather than "intentionally concealing" the source of the Articles' funding, the disclaimer was an accurate, conservative measure to ensure compliance with Section 17(b) of the Securities Act, which requires disclosure when an issuer pays for a publication. 15 U.S.C.A. § 77q. "Section 17(b) was designed to protect the public from publications that purport to give an unbiased opinion but which opinions are in reality being paid for." *Sec. & Exch. Comm'n v. Thompson*, 238 F.Supp.3d 575, 590 (S.D.N.Y. 2017) (internal citation omitted). No investor could have been misled into thinking the Articles were unbiased because they stated they were funded by a corporation as opposed to a corporate insider. This is far from the "inherently deceptive act" required to establish scheme liability. Because the SEC's scheme liability theories cannot stand on their own footing absent well-pled allegations of materials misstatements, they too must be dismissed.

## **CONCLUSION**

For the reasons set forth above, DeFrancesco respectfully requests that the Court dismiss Counts I and II of the Complaint as against him with prejudice.

Dated:      New York, New York
            April 5, 2023                                MILBANK LLP


                                                        By:  /s/ Adam Fee
                                                        George S. Canellos
                                                        Adam J. Fee
                                                        Jeremy B. Butt
                                                        55 Hudson Yards
                                                        New York, NY 10001 /
                                                        2029 Century Park East, 33rd Fl.
                                                        Los Angeles, CA 90067
                                                        Telephone: (212) 530-5000
                                                        gcanellos@milbank.com
                                                        afee@milbank.com
                                                        jbutt@milbank
                                                        *Counsel for Andrew DeFrancesco*