**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                       Plaintiff,<br><br>   v.<br><br>ANDREW DEFRANCESCO, MARLIO MAURICIO DIAZ CARDONA, CARLOS FELIPE REZK, NIKOLA FAUKOVIC, and CATHERINE DEFRANCESCO,<br><br>                   Defendants. | No. 23 Civ. 00131 (JSR) |

## ANDREW DEFRANCESCO'S ANSWER TO
## THE SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT

Defendant Andrew DeFrancesco ("Mr. DeFrancesco"), by his undersigned attorneys, hereby responds to the Securities and Exchange Commission's ("SEC") complaint, dated January 6, 2023 (the "Complaint"), as follows:[1]

## GENERAL DENIALS

Mr. DeFrancesco categorically denies any allegation that he violated any applicable laws, rules, regulations, or standards. In responding to the allegations set forth in the Complaint, Mr. DeFrancesco (i) incorporates into each response a denial of any allegations set forth in the Complaint to the extent such allegations assert or suggest that Mr. DeFrancesco made any untrue statement of material fact or omitted to state a material fact necessary to make the statements made not misleading, and (ii) intends to respond only as to allegations directed at him, and should not be deemed to be responding to allegations that are directed solely at other Defendants.

---

[1] The Complaint utilizes headings and subheadings, to which no response is required. To the extent that any of the headings or subheadings present factual allegations, Mr. DeFrancesco denies each heading or subheading, unless expressly stated otherwise.

## SPECIFIC DENIALS

## SUMMARY OF ALLEGATIONS

1.　　Beginning in March 2018, Defendants DeFrancesco, Diaz, and Rezk, each of whom was an officer or director of Cool Holdings, Inc. ("Cool"), a publicly-traded company, orchestrated a fraudulent scheme to deceive the investing public about the operations and prospects of Cool, through repeated, materially false and misleading misstatements and omissions in SEC filings and in a promotional campaign.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 1.

2.　　DeFrancesco—the chief architect of the scheme—was chairman of Cool's board of directors from March through December 2018. Diaz and Rezk were Cool's chief executive officer and chief marketing officer, respectively, from March 2018 through early June 2019 (the "Relevant Period").

**ANSWER:**  Mr. DeFrancesco admits that he was chairman of Cool's board of directors from March through December 2018. Mr. DeFrancesco further admits that Diaz and Rezk served as Cool's chief executive officer and chief marketing officer, respectively, from March 2018 through early June 2019, but otherwise denies the allegations in Paragraph 2.

3.　　Throughout the Relevant Period, Cool, the operator of a small chain of retail electronic stores, made materially false and misleading statements and omissions in its SEC filings, including about its critical business relationship with the consumer electronics giant Apple Inc. ("Apple"). Diaz signed each of Cool's false and misleading quarterly reports; Diaz and Rezk both signed Cool's false and misleading annual report; and Diaz, DeFrancesco, and Rezk all signed Cool's false and misleading registration statement and amendments (collectively, the "Registration Statement"). The Registration Statement, which never went effective, sought to offer and sell up to $25,000,000 worth of securities.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 as it pertains to the Registration Statement, and otherwise denies the allegations in Paragraph 3.

4.　　DeFrancesco, with the assistance of Diaz and Rezk, as well as his executive assistant Faukovic, also orchestrated a "pump and dump" of Cool stock, which included the publication of a series of fraudulent articles, secretly funded by DeFrancesco, in mid-September 2018. Despite Cool's serious financial problems, underperforming stores, and precarious relationship with Apple, the promotional articles baselessly stated, among other things, that Cool's stores were more profitable per square foot than retailers such as Tiffany & Co. and Michael Kors, and that Cool planned to expand the number of its Apple-product-focused stores from nine

locations in March 2018 to 200 locations by 2020. Cool's share price and trading volume jumped significantly during and following the publication of the false and misleading articles.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 4.

5.    With Faukovic's assistance, in the four days following the start of the promotion— while Cool's share price and trading activity were artificially elevated— DeFrancesco sold more than 500,000 shares that he owned and held in numerous brokerage accounts in the names of nominee entities under his secret control. DeFrancesco's proceeds from these sales totaled nearly $3.5 million.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 5.

6.    By the end of 2018, DeFrancesco had sold more than 1.6 million shares, all through accounts nominally controlled by his ex-wife Catherine DeFrancesco and other family members, but really controlled by DeFrancesco, for proceeds of more than $8 million.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 6.

7.    DeFrancesco, aided by Faukovic and Catherine DeFrancesco, concealed his ownership of Cool shares, which at its height during the Relevant Period accounted for more than 32% of Cool's outstanding shares. In order to maintain the secrecy of DeFrancesco's stock ownership, he and Catherine DeFrancesco filed false beneficial ownership reports with the SEC.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 7.

8.    Diaz, Faukovic, and Rezk also sold Cool stock, while Cool was disseminating false and misleading information in its SEC filings.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 8.

## <u>VIOLATIONS</u>

9.    By virtue of the conduct alleged herein, each of the Defendants, directly or indirectly, singly or in concert, violated and are otherwise liable for violations of the federal securities laws as set forth herein.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 9.

10.    DeFrancesco violated Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c)]; Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)], and Rule 13d-1(a) thereunder [17 C.F.R. § 240.13d-1(a)]; and Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)], and Rule 16a-3 thereunder [17 C.F.R. § 240.16a-3].

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 10.

11.     Diaz violated Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and, in the alternative, aided and abetted DeFrancesco's violations of Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 as it pertains to Diaz, and otherwise denies the allegations in Paragraph 11.

12.     Rezk violated Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and, in the alternative, aided and abetted DeFrancesco's violations of Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)]; and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 as it pertains to Rezk, and otherwise denies the allegations in Paragraph 12.

13.     Faukovic aided and abetted DeFrancesco's violations of Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 as it pertains to Faukovic, and otherwise denies the allegations in Paragraph 13.

14.     Catherine DeFrancesco violated Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)], and Rule 13d-1(a) thereunder [17 C.F.R. § 240.13d-1(a)].

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.     Unless the Defendants are permanently restrained and enjoined, they will continue

to engage in the acts, practices, and courses of business set forth in this Complaint, and in acts, practices, and courses of business of similar type and object.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 15.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

16.     The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b) and (d) of the Securities Act [15 U.S.C. §§ 77t(b) and (d)], and Sections 21(d) and (e) of the Exchange Act [15 U.S.C. §§ 78u(d) and (e)].

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 16.

17.     The Commission seeks a final judgment: (a) permanently restraining and enjoining the Defendants from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; (b) ordering DeFrancesco, Diaz, Rezk, and Faukovic to disgorge the ill-gotten gains they received from the unlawful conduct set forth in this Complaint, together with prejudgment interest, pursuant to Sections 21(d)(3), 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), 78u(d)(7)]; (c) ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (d) as to DeFrancesco, Diaz and Rezk, prohibiting each from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief that the Court may deem appropriate.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 17 of the Complaint,

except admits that the Commission purports to seek a final judgment as described in Paragraph 17.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to Sections 22(a) and (c) of the Securities Act [15 U.S.C. §§ 77v(a) and 77v(c)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa].

**ANSWER:**  Mr. DeFrancesco admits that the Court has jurisdiction over this action.

19.     Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce or the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 19 as it pertains to other Defendants, and otherwise denies the allegations in Paragraph 19.

20.     Venue lies in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions and courses of business alleged in this Complaint occurred within the Southern District of New York, and were affected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails. Among other things, at all relevant times, Defendants solicited investments in securities from investors in this District and sold securities through an exchange located in this District.

**ANSWER:**  Mr. DeFrancesco admits that venue is proper in this District.

## DEFENDANTS

21.     DeFrancesco, born in 1970, is a resident of Miami Beach, Florida. He was married to Catherine DeFrancesco in 1999 and they divorced in or about 2017. DeFrancesco was chairman of the board of directors of Cool from March 12, 2018 through December 31, 2018.

**ANSWER:**  Mr. DeFrancesco admits, upon information and belief, to Paragraph 21.

22.     DeFrancesco conducted business in North America through a company he called the "Delavaco Group" and described as a private equity and merchant banking firm. According to the Delavaco Group's website, DeFrancesco held the titles of president and chief investment officer of the Delavaco Group. Delavaco Holdings, Inc. ("Delavaco"), which shared an address and phone number with the Delavaco Group, was the corporate entity through which the Delavaco Group operated.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 22.

23.     Diaz, born in 1974, is a resident of Coral Gables, Florida. He was Cool's CEO and a director from March 12, 2018 through June 5, 2019.

**ANSWER:**  Mr. DeFrancesco admits that Diaz was Cool's CEO from March 2018 through June 2019, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.     Rezk, born in 1973, is a resident of Miami, Florida. He was Cool's chief sales and marketing officer and a director from March 12, 2018 through June 5, 2019.

**ANSWER:**  Mr. DeFrancesco admits that Rezk was Cool's chief sales and marketing officer from March 2018 through June 2019, but otherwise lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 24.

25.     Faukovic, born in 1985, is a resident of Oakland Park, Florida. Throughout the Relevant Period, she was an employee of the Delavaco Group, where she was DeFrancesco's executive assistant. During the Relevant Period, Faukovic also went by the name Nikola Pineiro.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.     Catherine DeFrancesco, born in 1972, is a resident of Miami Beach, Toronto, and Gstaad, Switzerland. Throughout the Relevant Period, she was the nominal president of Delavaco and several other entities, which were actually controlled by DeFrancesco.

**ANSWER:** Mr. DeFrancesco admits that, upon information and belief, Catherine DeFrancesco was born in 1971, is a resident of Miami, and has residential properties in Miami Beach, Toronto, and Gstaad, Switzerland, but otherwise denies the allegations in Paragraph 26.

## RELEVANT ENTITIES

**I.   THE ISSUER**

27.     Cool, now known as Simply, Inc., is a Maryland corporation with its principal place of business in Miami, Florida. Cool was created in March 2018 by the reverse merger of a private company, Cooltech, Inc. ("Cooltech"), with InfoSonics, Inc. ("InfoSonics"), a company that was publicly traded on Nasdaq. Following the merger, the surviving company was briefly known as InfoSonics before changing its name in June 2018 to Cool Holdings, Inc. and its ticker symbol to "AWSM." Throughout the Relevant Period, Cool's common stock traded on Nasdaq and was registered pursuant to Section 12(b) of the Exchange Act. For purposes of this Complaint, the company is referred to as "Cool" from March 2018 through 2019.

**ANSWER:**  Mr. DeFrancesco admits to Paragraph 27.

28.     According to its first quarterly report filed with the Commission for the period ending March 31, 2018, Cool was "a retailer and wholesaler of consumer electronics focused on the operation and expansion of our OneClick® retail stores in the United States, Latin America and Canada," that sold "Apple and Apple-approved products and accessories." As of that date, Cool had nine OneClick stores: six in Argentina and three in Florida.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 28 of the Complaint for its contents.  Mr. DeFrancesco otherwise admits to Paragraph 28.

29.      On June 14, 2022, the company filed for bankruptcy under Section 7 of the Bankruptcy Code.

**ANSWER:**   To the extent Paragraph 29 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise admits to Paragraph 29.

## II.    THE DEFRANCESCO NOMINEE ENTITIES

30.      DeFrancesco Motorsports, Inc. ("DeFrancesco Motorsports") is a corporation organized under the laws of the Province of Ontario, Canada. Throughout the Relevant Period, Catherine DeFrancesco was the nominal president of DeFrancesco Motorsports.

**ANSWER:** To the extent Paragraph 30 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30.

31.      Delavaco is a corporation organized under the laws of the State of Florida. Throughout the Relevant Period, Catherine DeFrancesco was the nominal president of Delavaco.

**ANSWER:**   To the extent Paragraph 31 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.

32.      Gorgie Holdings LLC ("Gorgie") is a corporation organized under the laws of the State of Florida. Throughout the Relevant Period, Catherine DeFrancesco was the nominal manager of Gorgie.

**ANSWER:**   To the extent Paragraph 32 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32.

33.      GT Capital, Inc. ("GT Capital"), is a corporation organized under the laws of the

Province of Ontario, Canada. Throughout the Relevant Period, DeFrancesco's sister was the nominal president of GT Capital.

**ANSWER:**   To the extent Paragraph 33 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.

34.     Marcandy Investment Corp. ("Marcandy") is a corporation organized under the laws of the Province of Ontario, Canada. Throughout the Relevant Period, Catherine DeFrancesco was the nominal president of Marcandy.

**ANSWER:** To the extent Paragraph 34 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.

35.     Namaste Gorgie, LLC ("Namaste") is a corporation organized under the laws of the State of Florida. Throughout the Relevant Period, Catherine DeFrancesco was the nominal president of Namaste.

**ANSWER:** To the extent Paragraph 35 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

36.     NG Bahamas Ltd. ("NG") is a corporation organized under the laws of The Bahamas. Throughout the Relevant Period, Catherine DeFrancesco was the nominal director of NG.

**ANSWER:** To the extent Paragraph 36 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.

37.     Rockstar is an entity organized under the laws of The Bahamas. Throughout the Relevant Period, Catherine DeFrancesco was the nominal president, director and secretary of Rockstar.

**ANSWER:**  To the extent Paragraph 37 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.

38.     Sunnybrook Preemie Investments, Inc. ("Sunnybrook") is a corporation organized under the laws of the Province of Ontario, Canada. Throughout the Relevant Period, DeFrancesco's mother was the nominal president of Sunnybrook.

**ANSWER:**  To the extent Paragraph 38 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38.

39.     Four trusts, using the naming convention of "The Catherine DeFrancesco ITF" followed by the name of one of the DeFrancescos' four children, collectively (the "Children's Trusts") were nominally trusts created for each of the children of Andrew and Catherine DeFrancesco. Throughout the Relevant Period, Catherine DeFrancesco was the trustee for each of these trusts; however DeFrancesco controlled the Children's Trusts, made investment decisions for the Children's Trusts and directed trading decisions in the Children's Trusts' brokerage accounts.

**ANSWER:**  Mr. DeFrancesco admits that four trusts were created in the names of each of his children with Catherine DeFrancesco and that she was the trustee for the referenced trusts, but otherwise denies the allegations in Paragraph 39.

40.     DeFrancesco Motorsports, Delavaco, Gorgie, GT Capital, Marcandy, Namaste, NG, Rockstar, Sunnybrook, and the Children's' Trusts (collectively the "Nominee Entities") were created by or at the direction of DeFrancesco.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 40.

41.     Notwithstanding the names of the individuals who, on paper, were the beneficial owners of these entities, DeFrancesco actually controlled all of these entities. He made all their business decisions, including investment decisions, and directed all trading in their brokerage accounts.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 41.

42.     Most of the Nominee Entities, including Delavaco, shared as an address 366 Bay Street, #200, Toronto, ON MSH 4B2 or 2300 E. Las Olas Boulevard, 4th Floor, Ft Lauderdale, Florida 33301.

**ANSWER:**   To the extent Paragraph 42 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.

## **FACTS**

43.     As described in greater detail below, Defendants each had a different role in the scheme to deceive the public about Cool.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 43.

44.     DeFrancesco was integrally involved in each aspect of the fraudulent scheme:

   a.   He was a key player in the creation of Cool, a publicly-traded company that would serve as a vehicle for market manipulation;

   b.   He took Cool public despite his knowledge, and without public disclosure, of Cool's precarious financial condition;

   c.   He controlled Cool, including its access to capital, and used his position to amass a huge position in Cool shares;

   d.   He created a network of entities, nominally owned and controlled by others, and used these entities to hold, trade and conceal his substantial Cool stock holdings;

   e.   He failed to publicly report his ownership of Cool shares, as he was legally required to do;

   f.   He participated in, and secretly funded a fraudulent promotional campaign that disseminated baseless statements about Cool and omitted information necessary to make the promotional claims not misleading;

   g.   He directed Faukovic to ensure that Cool shares held in the name of his Nominee Entities had been deposited at brokerages in advance of the fraudulent promotion, so that he would be able to sell those shares as soon as the fraudulent promotion had the desired effect on the market for Cool shares; and

h. He liquidated his Cool shares—including immediately after the demand for, and price of, Cool stock spiked in response to the fraudulent promotional campaign—making millions of dollars.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 44.

45. Diaz and Rezk, along with DeFrancesco, created Cool and took it public. From the beginning of Cool's existence as a publicly-traded company, through the entire Relevant Period, Diaz and Rezk hid Cool's significant business problems from the public, and they participated in the dissemination of false and misleading information about Cool in its SEC filings and in the promotional campaign. While Cool continued to deceive the public, both Diaz and Rezk sold their shares of Cool for proceeds of approximately $922,000 and $838,000, respectively.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 as it pertains to Diaz and Rezk, and otherwise denies the allegations in Paragraph 45.

46. Faukovic assisted DeFrancesco in carrying out several aspects of the fraudulent scheme, including helping him conceal his ownership of Cool shares.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 46.

47. Catherine DeFrancesco lied about the control of Nominee Entities and ownership of shares held in the names of those entities, making misrepresentations and omitting material information in an SEC filing.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47.

## I. DeFrancesco, Diaz, and Rezk Created Cool and Took It Public Despite Financial and Performance Troubles.

48. DeFrancesco, Diaz, and Rezk created Cool and took it public in March 2018, despite their knowledge of the business's financial difficulties, the poor performance of its stores, and the precarious status of Cool's critical relationship with Apple.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 as it pertains to Diaz and Rezk, and otherwise denies the allegations in Paragraph 48.

49. The three men first met and began to do business in or about 2015. At the time, Diaz and Rezk worked at Icon Networks LLC ("Icon"), a distributor of consumer electronics, including Apple products.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 as it pertains to Diaz and Rezk, and otherwise denies the allegations in Paragraph 49.

50.    By mid-2016, DeFrancesco, Diaz and Rezk had decided to create a holding company that would acquire consumer electronics businesses, and to take that company public.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 as it pertains to Diaz and Rezk, and otherwise denies the allegations in Paragraph 50.

51.    In or about October 2016, Cooltech was incorporated to serve as the holding company. Diaz became Cooltech's CEO, Rezk became its chief sales and marketing officer, and DeFrancesco became its board chairman.

**ANSWER:** Mr. DeFrancesco admits to Paragraph 51.

52.    Shortly thereafter, Cooltech acquired Icon and four OneClick stores, which sold Apple products, two each in the United States and Argentina.

**ANSWER:** Mr. DeFrancesco admits to Paragraph 52.

53.    In connection with these acquisitions, DeFrancesco provided financing and certain of the Nominee Entities received more Cooltech shares.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54.    By December 2016, immediately after these acquisitions, Diaz and Rezk were already struggling to find enough capital to support Cooltech's business.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.

55.    That month, Diaz floated a proposal to raise cash from investors; however, DeFrancesco thwarted that proposal, replying in an email to Diaz that "if any funds are raised outside of the Delavaco I'm out of the deal and will need to be paid out immediately."

**ANSWER:**   To the extent Paragraph 55 of the Complaint refers to documents, Mr.

- 13 -

DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55.

56.     On or about July 25, 2017, Cooltech entered into a reverse merger agreement with InfoSonics, a Nasdaq-listed issuer that DeFrancesco had found and identified as a possible merger candidate, by which Cooltech would become a publicly-traded company. In connection with the InfoSonics merger, DeFrancesco entered into transactions in which the Nominee Entities obtained a significant amount of InfoSonics shares.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56, and otherwise denies the allegations in Paragraph 56.

57.     By the fourth quarter of 2017, months before the reverse merger was completed, Cooltech's relationship with Apple was deteriorating. In October and November 2017, for example, Apple repeatedly contacted Diaz about paying overdue invoices for inventory and held back inventory until the company brought its account current.

**ANSWER:**  Mr. DeFrancesco denies the characterization that "Cooltech's relationship with Apple was deteriorating" by the fourth quarter of 2017. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 57.

58.     On January 17, 2018, as a result of poor performance by Cooltech, representatives from Apple met with Rezk and other representatives of Cooltech. As memorialized in an email from Apple to Rezk and others on that date, Apple stated at the meeting that it was halting the expansion of Apple's licensing in Latin America with Cooltech—even prohibiting the opening of three new stores in Argentina that Apple had previously approved—until "the performance of existing stores reach the approved business plan and metrics" (the "January 2018 halt").

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 58 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58.

59.     The email also noted, "CoolTech agreed that [a] big part of the slow performance of the new stores is driven by the fact that credit has been an issue. . . ."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in

Paragraph 59 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.

60.      Cooltech's money woes were not limited to its stores. As of mid-February 2018, as DeFrancesco, Diaz, Rezk, and Faukovic were aware, the company owed more than $75,000 to the landlord for the rental of Cool's corporate offices in Miami.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 as it pertains to Diaz, Rezk, and Faukovic. Mr. DeFrancesco denies all remaining allegations in Paragraph 60.

61.      On March 12, 2018, the reverse merger of Cooltech and InfoSonics was finalized and Cool became a publicly-traded company. DeFrancesco, Diaz, and Rezk became Cool's board chairman, CEO, and chief marketing officer, respectively.

**ANSWER:** Mr. DeFrancesco admits that he, Diaz, and Rezk were Cool's board chairman, CEO, and chief marketing officer, respectively, but otherwise denies the allegations in Paragraph 61.

62.      In connection with the merger, the InfoSonics shares DeFrancesco had purchased for his Nominee Entities became Cool shares. In addition, the Cooltech shares held by the Nominee Entities also became Cool shares, resulting in a large Cool share ownership by the Nominee Entities.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 62.

63.      Diaz and Rezk also obtained Cool shares in connection with the merger.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63.

## II.     Cool's Financial Troubles Continued and Further Strained Its Relationship with Apple.

64.      Following the merger, Cool continued to be unable to meet obligations to Apple. Cool was habitually past due on its account with Apple, leading Apple to threaten to put Cool's account on hold.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 64.

65.      In a May 4, 2018 email, for example, a collections manager at Apple informed DeFrancesco, Rezk, and Diaz, "If we don't receive payment today we will be forced to put One

Click's account on hold. Please . . . confirm payment of the $518K that is due."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 65 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65.

66.     The next day, in a series of emails between DeFrancesco and Rezk pertaining to the Apple collection manager's email, DeFrancesco told Rezk, "They are telling us to [F*ck] off." Rezk replied, "Yes. The relationship is strained because we have not been on time with payments."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 66 of the Complaint for thier contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66.

67.     In a reply email, DeFrancesco indicated to Diaz and Rezk that he would soon "be prepared" to invest $600,000 to $1 million more in Cool.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 67 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67.

68.     In that same May 5, 2018 email conversation, Diaz explained the amount of money DeFrancesco was offering was not enough. Diaz stated, "We are not able to raise money or get a line of credit. . . . . We need to look into a deeper strategy."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 68 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.

69.     Rezk agreed with Diaz, stating, "Even though paying apple [sic] would help, this would only be a bandaid and We [sic] need to sort out the big picture like being fully bankable and having the proper capital structure to be self-sufficient."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 69 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69.

70.     DeFrancesco replied that he was "working on a $2.5 to $4m overall plan for inventory."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 70 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

71.     Further compounding Cool's woes, DeFrancesco, Diaz and Rezk tried unsuccessfully to persuade Apple to lift the January 2018 halt on Cool's expansion in Latin America, which was Cool's biggest market for Apple stores during the Relevant Period.

**ANSWER:**   To the extent Paragraph 71 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise denies the allegations in Paragraph 71.

72.     On June 7, 2018, DeFrancesco sent an email, drafted by Rezk, to a director at Apple responsible for Apple's Latin American operations (the "Apple Director"), and copied Faukovic. The email claimed that Cool had made progress regarding store operations and inventory levels, that DeFrancesco and his partners had "funded US$3.7 Million financing last Friday for the company," and that "[t]hese funds are intended to further accelerate and optimize the operation of our current stores as well as potential expansion once Apple is comfortable with our performance."

**ANSWER:**   Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 72 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72.

73.     On June 13, 2018, the Apple Director responded to DeFrancesco's email, copying Faukovic. The Apple Director stated that Apple reviewed "the impact of the initiatives taken by CoolTech" and identified several areas of concern including:

  a.   "Inventory deficiencies across all Authorized Locations and key [lines of

  b.   business]";

  c.   "Inventory . . . not sufficient to meet agreed business plans"; and

  d.   "Authorized Locations are under-performing against business plans . . . ."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 73 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph 73.

74.     The Apple Director concluded that, based on these deficiencies, Cool was "far from reaching proposed 'Business Plan' metrics."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 74 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74.

75.     The Apple Director also attached documentation to his email, supporting Apple's findings regarding Cool's poor performance.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 75 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75.

76.     DeFrancesco forwarded the Apple Director's June 13 email to Diaz and Rezk.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 76 of the Complaint.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76.

77.     On June 14, 2018, Apple emailed Cool, copying Rezk and others, that "the amount of $429,709.45 is currently past due" and in addition to that amount Cool would need to pay another $243,841.76 by June 29. The email further stated that Cool's "overall credit standing with Apple has already been affected and will continue to deteriorate the longer you wait to clear this past due."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 77 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77.

78.     On the same day that Cool received this email from Apple, Cool issued a press release, with the heading "InfoSonics Announces Strategic Name Change to Cool Holdings, Inc."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 78 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph 78.

79.     Notwithstanding the many ominous communications with Apple and the large past due amount, the June 14 press release quoted DeFrancesco:

> Effective today our focus is to continue the expansion of **our strong partnership with Apple®,** one of the world's largest and most iconic brands, and to exploit additional investment and acquisition opportunities of minority and majority interests in other premium retail brands to accelerate profitable growth.

(Emphasis added.)

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 79 of the Complaint for its contents.

80.     The June 14, 2018 press release also quoted DeFrancesco as saying, "We will continue expanding the retail footprint of our OneClick® branded stores to become the largest authorized reseller of Apple® products and services in the Americas."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 80 of the Complaint for its contents.

81.     On June 27, 2018, the Apple Director emailed DeFrancesco and requested to meet after having not heard from him since the director's email to DeFrancesco on June 13, 2018.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 81 of the Complaint.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81.

82.     On June 28, 2018, DeFrancesco emailed the Apple Director a message drafted by Rezk, claiming that Cool was making progress and raising the hope of expanding the number of Cool stores in Latin America.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 82 of the Complaint. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82.

83.     On July 4, 2018, DeFrancesco again emailed the Apple Director, stating that Cool was "preparing to forward another cash infusion for expansion."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in

Paragraph 83 of the Complaint for its contents.

84.     Faukovic arranged a call among the Apple Director and others from Apple, DeFrancesco, Rezk, and Diaz for July 16, 2018.

**ANSWER:**   To the extent Paragraph 84 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84.

85.     Rezk prepared talking points for DeFrancesco for the call, specifically flagging the January 2018 halt as one of the causes of Cool's performance issues.

**ANSWER:**   To the extent Paragraph 85 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85.

86.     Despite DeFrancesco's pleas to Apple in June and July 2018 to permit Cool to pursue expansion plans, Apple did not agree to lift the halt.

**ANSWER:**   To the extent Paragraph 86 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise denies the allegations in Paragraph 86.

87.     While Cool and Apple were communicating in May, June and July 2018 about late payments and Cool's failure to meet business plan metrics, Cool also continued to be late in its rent payments for its corporate offices.

**ANSWER:**   To the extent Paragraph 87 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise denies the allegations in Paragraph 87.

88.     When on August 6, 2018 DeFrancesco emailed Diaz about the failure to pay rent, Diaz replied, "Every penny is going to Apple for more inventory to achieve 30 days improvement for [the Apple Director]."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 88 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88.

89.      On August 20, 2018, Cool issued a press release announcing that it had exercised an option, negotiated in connection with the reverse merger on March 12, 2018, whereby Cool acquired a chain of seven OneClick stores in the Dominican Republic, bringing the total number of Cool-owned stores to 16.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 89 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89.

90.      The press release also stated that OneClick is "a chain of retail stores and an authorized reseller under Apple® Premium Partner, APR (Apple® Premium Reseller) and AAR MB (Apple® Authorized Reseller Mono-Brand) programs . . ."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 90 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90.

91.      Rezk forwarded the announcement to the Apple Director on the same day.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 91 of the Complaint. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91.

92.      On August 22, 2018, the Apple Director emailed Diaz and Rezk, replying to Rezk's August 20 email. In connection with Cool's stores in Argentina, the email stated, "[Cool is] not yet delivering the results that we both agreed on in a consistent way. We also continue to have problems with Credit Hold because payments are not received on time . . . . There issues create several gaps in the supply chain that do not help us achieve the consistency in the business we want to see."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 92 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92.

93.     With respect to the stores in the Dominican Republic, the email noted that "the stores were without Inventory in store. In many cases [these stores] do not have all the products. Sometimes only low capacity models etc."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 93 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93.

94.     Apple also took exception to Cool's August 20 press release, stating, "As for the press release . . . not all the stores (as you know) in the Dominican Republic are in the program and the press release alludes to the fact that they are. . . . The unauthorized stores do not help the One Click (sic) brand or Apple because they lack the basic elements to achieve the success of the Monobrand program."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 94 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94.

95.     Apple's August 22, 2018 email also set specific terms for lifting the January 2018 halt on Cool's expansion. Apple stated:

> My message to you is as follows. We have to ensure that all stores have consistent inventory, that invoices are paid on time, that the experience is consistently good, and that the stores in the program consistently comply with the program's guidelines. For us to re-authorize an expansion with One-Click we need this to start happening in a consistent way for a reasonable time and in all stores that already operate in Latin America.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 95 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95.

## III.     DeFrancesco, Rezk, and Diaz Signed False and Misleading SEC Filings from March through September 2018.

96.     From March through September 2018, Cool made several materially false and misleading statements in filings with the Commission. These filings also omitted information necessary to make the statements made not materially misleading. For example, while possessing facts to the contrary, Cool projected explosive and imminent growth, including a greatly increased number of stores, and failed to disclose its damaged relationship with Apple and failure to operate existing stores profitably.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 96.

97.     Cool's quarterly report on Form 10-Q for the quarter ending March 31, 2018, filed on May 21, 2018, signed by Diaz, and Cool's quarterly report on Form 10-Q for the quarter ending June 30, 2018, filed on August 14, 2018, also signed by Diaz each stated:

     a.   Our goal in the next three (3) years is to expand our network of OneClick stores to 200 locations in Latin America, the U.S. and Canada to become one of Apple's largest retail partners. We expect that our growth will come from a combination of organic expansion on a store-by-store basis, as well as external acquisitions.

     b.   [T]he growth of our business is highly dependent upon our relationship with Apple in providing us with the licenses and approvals necessary to expand our footprint into various countries and regions around the world. Apple has very strict performance standards and guidelines that we must achieve and adhere to in order to be successful and continue to receive their support. Consequently, any deterioration of our performance or failure to adhere to their guidelines could jeopardize our strategy and adversely affect our financial performance.

     c.   Our sales and profitability depend in part upon opening new stores [selling Apple products] and operating them profitably . . . . If we fail to manage new store openings in a timely and cost-efficient manner, our growth or profits may decrease.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 97 of the Complaint for their contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97.

98.     Each of these statements was incorporated by reference into Cool's Registration Statement, filed on June 15, 2018, and amended August 28 and September 10, 2018, which was signed by Diaz, Rezk and DeFrancesco.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 98 of the Complaint for their contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98.

99.     The statements, and the SEC filings that contained or incorporated these statements, were false and misleading because Cool omitted the material facts necessary in order to make the statements not misleading, including that:

     a.   Apple had halted Cool's Latin American expansion by January 2018, and this halt remained in effect;

     b.   b. Cool had already repeatedly failed to adhere to Apple's guidelines, and Cool's failure to adhere to these guidelines was not merely a theoretical possibility;

c. Cool was unprofitable and had been continually underfunded with dire cash positions and financing prospects; and

d. Contrary to Cool's purported expansion plans, Cool did not have a license from Apple to operate in Canada, and had no concrete U.S. expansion plans.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 99.

100.    At the time that Diaz signed each of these SEC filings, he knew of and understood the dire significance of Apple's halt on Cool's Latin American expansion. Diaz was also aware that public disclosure of the January 2018 halt by Cool could be critically damaging for the company and its stock price. Moreover, Diaz knew that Cool had already failed to meet Apple's performance requirements, and that the existing stores were not operating profitably. Yet he knowingly signed each of these SEC filings. Accordingly, he knew or was reckless in not knowing that the above-mentioned statements, contained or incorporated in Cool's quarterly reports and Registration Statement, were false and misleading.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100.

101.    At the time, DeFrancesco and Rezk signed the Registration Statement, they were also aware and understood the significance of the January 2018 halt, that Cool's purported goal of expanding to 200 stores was unattainable and had no basis in reality, that Cool had already failed to meet Apple's performance requirements, and that the existing stores were not operating profitably. Yet they both knowingly signed the Registration Statement. Accordingly, they knew or were reckless in not knowing that the above-mentioned statements, incorporated by reference into the Registration Statement, were false and misleading.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 as it pertains to Rezk, and otherwise denies the allegations in Paragraph 101.

IV.    **DeFrancesco, Aided by Diaz and Rezk, Orchestrated a Pump and Dump in Mid-September 2018.**

102.    While DeFrancesco, Diaz, and Rezk were misleading the public about Cool's business and prospects, DeFrancesco (through the Nominee Entities) was preparing for, and orchestrating, a pump and dump, including by amassing control over nearly one-third of Cool's publicly traded shares.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 102.

A.    *DeFrancesco Created an Infrastructure of Nominee Entities to Facilitate, with Faukovic's Help, the Clandestine Ownership and Trading of Securities.*

103.     Even before his association with Cool, DeFrancesco had created numerous entities, including the Nominee Entities, that he could secretly control and use to covertly hold and trade securities that he owned.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 103.

104.     DeFrancesco structured most of these entities to be nominally headed by Catherine DeFrancesco. His sister and mother were each the nominal head of one Nominee Entity.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 104.

105.     DeFrancesco controlled all of the Nominee Entities and made all of their business decisions, including their investment and trading decisions.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 105.

106.     During the Relevant Period, DeFrancesco entrusted Faukovic to perform numerous tasks to facilitate his secret control of the Nominee Entities.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 106.

107.     He directed Faukovic to help open brokerage accounts for Nominee Entities, and to carry out his instructions with respect to the accounts, including wiring funds out of the accounts and ensuring shares were deposited into them.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 107.

108.     During the Relevant Period, Faukovic had online access to brokerage accounts for Delavaco and the Children's Trusts.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108 of the Complaint, and otherwise denies the allegations in Paragraph 108.

109.     Faukovic worked with Cool executives to get Cool shares for DeFrancesco transferred into the names of Nominee Entities.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 109.

110.     Faukovic also frequently arranged for Catherine DeFrancesco to sign documents pertaining to Nominee Entities.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110.

111.    Faukovic consistently, and exclusively, followed DeFrancesco's instructions with respect to the cash and securities in the names of the Nominee Entities, even though she knew he was not an officer of these entities, and on paper was not in control of these entities.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111.

### B.    *DeFrancesco Continually Amassed Cool Shares in the Names of the Nominee Entities.*

112.    Before the March 2018 merger with InfoSonics, DeFrancesco acquired Cooltech shares in connection with his financing of the company, putting the shares in the names of Nominee Entities. When the merger occurred, these shares were converted to shares of Cool, still in the Nominee Entities' names.

**ANSWER:**  To the extent Paragraph 112 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112.

113.    Similarly, DeFrancesco entered intro pre-merger transactions in which he obtained InfoSonics shares in the names of the Nominee Entities that also converted into Cool shares after the merger was finalized, also still in the Nominee Entities' names.

**ANSWER:**  To the extent Paragraph 113 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113.

114.    Less than a month after the merger, in April 2018, DeFrancesco arranged for Delavaco to obtain a promissory note, in exchange for a $1 million loan to Cool. The loan was actually financed by funds from three of the Nominee Entities, even though DeFrancesco had the note issued to Delavaco alone.

**ANSWER:**  To the extent Paragraph 114 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114.

115.    On April 17, 2018, Cool filed a disclosure statement with the SEC relating to this promissory note, disclosing only that the company had entered into a loan transaction with Delavaco, to be evidenced by a note. The statement was materially misleading, as it omitted that the loan agreement was with a related party, that the noteholder was a related party, and that the loan had actually come from a nominee entity controlled by board chairman DeFrancesco.

**ANSWER:**    To the extent Paragraph 115 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115.

116.    On May 30, 2018, DeFrancesco signed a board resolution approving a debt conversion agreement through which Cool would issue shares in repayment of the April 2018 promissory note, as well as in repayment of other debt held by the Nominee Entities and other noteholders.

**ANSWER:**    To the extent Paragraph 116 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116.

117.    As a further bonus, the proposed debt conversion agreement, approved by DeFrancesco, provided that the noteholders, including the Nominee Entities, would also receive warrants, entitling them to buy even more shares at an even lower price in the future.

**ANSWER:**    To the extent Paragraph 117 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117.

118.    In July 2018, DeFrancesco acquired, through Delavaco, additional notes held by another Cool investor.

**ANSWER:**    To the extent Paragraph 118 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 118.

119.    On August 15, 2018, the debt conversion agreement closed. DeFrancesco converted the April 2018 promissory note, the additional notes obtained in July 2018, and other debt held in the name of Nominee Entities. In total, DeFrancesco obtained, in the names of the Nominee Entities, almost a million Cool shares at a below-market price, as well as almost a million warrants that could be exercised at an even lower price.

**ANSWER:**   To the extent Paragraph 119 of the Complaint refers to documents, Mr.

DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco

otherwise denies all remaining allegations in Paragraph 119.

120.    Once again, Cool failed to disclose that Cool and DeFrancesco had engaged in a related party transaction. On August 16, 2018, Cool filed a Form 8-K with the SEC, disclosing the debt conversion transaction, but omitting that numerous nominee entities owned and controlled by board chairman DeFrancesco had benefited.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 120.

121.    Later in August 2018, the Nominee Entities received more than 65,000 shares in connection with Cool's exercise of its option to acquire OneClick stores in the Dominican Republic.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 121.

122.    As described in greater detail below, as DeFrancesco was acquiring these shares and Cool was making false and misleading SEC filings, he was planning a fraudulent promotional campaign to drive up Cool's share price.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 122.

123.    In the lead up to the promotional campaign, at DeFrancesco's instruction, Faukovic sought to identify every share the Nominees Entities, and thus DeFrancesco, owned, and worked with brokers and transfer agents to remove any restrictive legends, so that DeFrancesco would be able to sell the Cool shares without delay.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 123 as it pertains to Faukovic, and otherwise denies the

allegations in Paragraph 123.

124.    On September 13, 2018, Faukovic emailed DeFrancesco with a report and

breakdown of the 2,356,427 shares in the names of Nominee Entities, as summarized in the table below.

**Nominee Entities' Ownership of Cool shares as of September 13, 2018**

| Name | Number of Shares |
|------|-----------------:|
| Catherine DeFrancesco ITF [Child A] | 157,149 |
| Catherine DeFrancesco ITF [Child B] | 157,149 |
| Catherine DeFrancesco ITF [Child C] | 157,149 |
| Catherine DeFrancesco ITF [Child D] | 157,350 |
| DeFrancesco Motorsports Inc. | 5,844 |
| Delavaco | 1,131,284 |
| Gorgie | 278,741 |
| Marcandy | 29,631 |
| Namaste | 32,562 |
| Rockstar (including shares held in an account under the name "DSB Capital, Ltd." an entity that had merged into Rockstar) | 111,361 |
| NG | 135,869 |
| Sunnybrook | 2,338 |
| **TOTAL:** | 2,356,427 |

**ANSWER:** To the extent Paragraph 124 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124.

125.    By September 2018, DeFrancesco's holdings represented more than 32% of Cool's outstanding shares.

**ANSWER:** To the extent Paragraph 125 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 125.

126.    As set forth below, DeFrancesco did not disclose this large position in Cool stock in any SEC filing, notwithstanding that he was legally required to do so.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 126.

C. *DeFrancesco, Diaz, and Rezk Orchestrated a False Promotional Campaign to Boost the Price of Cool Shares.*

127.    While DeFrancesco secretly acquired more and more Cool shares, placing them in accounts in the names of the Nominee Entities, he also executed a plan to boost the price of Cool's stock with misleading promotional articles so that he could profitably sell the shares to public investors who were deprived of the information that they were buying from a company control person.

ANSWER:  Mr. DeFrancesco denies the allegations in Paragraph 127.

128.    On June 22, 2018, DeFrancesco hired a known promoter of penny stocks (the "Promoter") to conduct a promotional campaign for Cool for $350,000 in cash plus 150,000 shares of Cool's securities. DeFrancesco directed a Delavaco associate ("Associate A") to coordinate with Diaz and Rezk on the promotion.

ANSWER:  Mr. DeFrancesco denies the allegations in Paragraph 128.

129.    On June 25, 2018, Rezk emailed the Promoter a business marketing presentation about Cool along with a "talking points" document, and copied DeFrancesco, Diaz, and Associate A on the email.

ANSWER:  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 129 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129.

130.    In these "talking points," Rezk wrote, "Cool Holdings . . . has the task of becoming Apples [sic] largest . . . retailer in the Americas including Canada, USA and Latin America. The project is very ambitious and aims to have 200 stores by the year 2020." According to the talking points, this would be accomplished "Via Organic Growth" and "Via Acquisitions." Rezk wrote, "Apple has trusted OneClick with it's [sic] growth strategy and we are one the few companies that is expanding aggressively in these three markets."

ANSWER:  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 130 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130.

131.    The business marketing presentation Rezk sent the Promoter stated that Cool's OneClick stores had an average annual revenue per square foot of $3,750 and outpaced other, major retailers, as reflected in the following excerpt:



**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 131 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131.

132.    DeFrancesco, Rezk, and Diaz knew this claim was materially false and misleading.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132 as it pertains to Rezk and Diaz, and otherwise denies the allegations in Paragraph 132.

133.    Cool's internal revenue estimates were significantly lower for those same stores as of October 2018, ranging from just $200 in revenue per square foot for a 1,589 square foot store in the Dominican Republic, to a high of $3,653 in revenue per square foot for a 452 square foot store in Argentina.

**ANSWER:**  To the extent Paragraph 133 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133.

134.    According to Cool's internal revenue estimates, at that time, the average revenue

per square foot across its then 17 stores was $1,348 and the average square foot size was 1,022 square feet.

**ANSWER:** To the extent Paragraph 134 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134.

135.    Based on the business marking presentation, along with conversations with Rezk and press releases Rezk sent the Promoter, the Promoter drafted several articles.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 135.

136.    On September 4, 2018, the Promoter sent an email to Rezk, DeFrancesco, another Cool director and Associate A, with drafts of two articles "for approval."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 136 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136.

137.    The draft articles falsely stated, among other things, that Cool's existing stores "earn an average of $3,750 per square foot," and "The Company is planning 200 stores in the U.S. by 2020. With an average size of 1200 square feet, that's a revenue stream worth $900 million."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 137 of the Complaint for their contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137.

138.    The Promoter's email suggested numerous potential headlines, most of which incorporated the baseless $900 million figure, such as "The $900 Million Retail Tech that Outdoes Apple," and "Why is Apple Giving This Tiny Stock a $900 Million Revenue Stream?"

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 138 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138.

139.     On September 5, 2018, Associate A forwarded the articles to Rezk, who had already received them, and to Diaz, for review and comments. Diaz sent a reply email to DeFrancesco, Associate A, and Rezk, writing, "We have no funding for this. We are a bunch of irresponsable [sic] people if we approve this knowing the amount of outstanding obligations piling up. Please don't do it."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 139 of the Complaint for their contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139.

140.     Rezk replied that day to DeFrancesco, Associate A, and Diaz, stating, "Andrew we cannot afford this. Last time was tough to suggest. We do not have this on our budget." DeFrancesco responded later that day to Diaz, Rezk, and Associate A, stating, "I will pay for it and take it back out of the financing."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 140 of the Complaint for its contents.

141.     On September 6, 2018, Associate A emailed Rezk, the Promoter, DeFrancesco, and Faukovic, and asked Rezk to "confirm your edits are final." Associate A also wrote, "I have included Nikki [Faukovic] on this chain. She will be send [sic] funds so pls send her wire details." Rezk responded: "Yup…mine are final…Unless [Diaz] or [DeFrancesco] have anything to add."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 141 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141.

142.     On September 10, 2018, the Promoter sent an email to Rezk and Associate A with the subject line "Lawyers Feedback on Cool Holdings – Urgent," stating that "it is critical that you have support that confirms" several claims in the draft articles, including, "Cool Holdings plans to roll out 200 boutique stores by 2020," and "the $3,750 per square foot figure." Associate A forwarded the email to Diaz.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 142 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142.

143.     On September 11, 2018, Rezk sent a reply email to the Promoter, copying Diaz and Associate A, stating, among other things, "We have shared this information with our vendors, customers and investors in [sic] multiple occasions . . . Having said this, we have not placed [the

- 33 -

business marketing plan] on our website because of the implications of posting it."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 143 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 143.

144.    Rezk's email further stated, as to the representation that Cool planned to roll out 200 stores by 2020, that this statement has "implications because of the cash requirements to get there."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 144 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 144.

145.    On September 11, 2018, the Promoter again emailed Rezk, copying Diaz, further inquiring about the $3,750 per square foot figure. The email stated, in part:

> This is the figure that is driving our projections of potentially $900 million in revenue, which is repeated throughout all of our articles.
>
> If the $3,750 per square foot figure only applies to the 2 or 3 stores in Florida (I note that the graphic refers to OneClick USA), then there is no basis to use that same figure for the 240 planned stores in Latin America. Thus, there would be no basis for a $900 million potential revenue projection.
>
> Could you please provide the backup for this as soon as possible.
>
> Sorry to be a pain – I know all of this is tedious – but we just want to keep both of us safe from an [sic] possible problems down the road.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 145 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145.

146.    On September 12, 2018, Rezk replied to the Promoter, copying Diaz and Associate A, "the 3750 figure applies to all stores it is an average per store."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 146 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146.

147.     On September 12, 2018, the Promoter sent five articles to Rezk, Diaz, DeFrancesco, and Associate A to authorize for publication. The Promoter also asked Rezk for "the updated presentation following my mail from yesterday? My lawyer really needs this to keep us all safe."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 147 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147.

148.     Rezk responded with one change unrelated to the $3,750 number on September 12, 2018.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 148 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148.

149.     The Promoter then sent the articles back and wrote to Rezk, copying Diaz, DeFrancesco, and Associate A, and asked, "Could you please review and let us know if we are good to go?" Rezk replied on September 12, 2018, in an email to the Promoter, also copying Diaz, DeFrancesco, and Associate A, "Looks good."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 149 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149.

150.     On September 16, 17, and 19, 2018, the promotional articles were published online.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150.

151.     The headlines of the articles were also false and misleading. These headlines included: "Small NASDAQ Company Just Got a Huge $900 Million Opportunity from Apple" and "Why is Apple Giving This Tiny Stock a $900 Million Opportunity."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 151 of the Complaint for their contents. Mr. DeFrancesco otherwise denies the allegations in Paragraph 151.

152.     The $900 million figure was derived by combining several false data points that Rezk had provided, including the false $3,750 per square foot revenue number, the false projection of growth to 200 stores, and the false 1,200 square feet size per store.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152.

153.     Each article also included the false statements that Rezk had supplied and confirmed to the Promoter about Cool's revenue per square foot, including: "Cool Holdings . . . and its all-Apple stores already earn an impressive $3,750 in revenue per single square foot. That's more than Tiffany & Co., more than Michael Kors—and way more than Costco."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 153 of the Complaint for their contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153.

154.     At least two of the articles also included the following false and misleading statement:

> You might not have heard of them yet, but in the next couple of years, you will – when the hundreds of expected Cool Holdings-owned OneClick stores selling Apple products rise up and one day potentially turn into 1,000, from as far North as Canada to the southernmost tip of Latin America.

This statement was misleading because the articles failed to disclose that Cool had insufficient operating capital and that Apple had already halted Cool's expansion and they had no license to operate Apple stores in Canada.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 154 of the Complaint for their contents. Mr. DeFrancesco otherwise denies the allegations in Paragraph 154.

155.     The articles included numerous other baseless assertions. One of the articles, for example, falsely claimed Apple was giving Cool "a taste of its hugely profitable real estate segment." This assertion was in the draft article that Rezk, Diaz, and DeFrancesco received for final approval.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 155 of the Complaint for their contents. Mr. DeFrancesco otherwise denies the allegations in Paragraph 155.

156.     Another article stated that Cool's stores were so successful, they were "even closing in on Apple-owned stores," falsely suggesting that Cool stores were becoming even more profitable beyond the false numbers provided in the article. This baseless assertion was also contained in the draft articles that Rezk, Diaz, and DeFrancesco received for final approval.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 156 of the Complaint for their contents. Mr. DeFrancesco otherwise denies the allegations in Paragraph 156.

157.     The articles also contained false disclaimers stating that Cool had paid $415,000 over four months for the promotional campaign. In reality, DeFrancesco had paid for the promotional campaign.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 157 of the Complaint for their contents. Mr. DeFrancesco otherwise denies the allegations in Paragraph 157.

158.     DeFrancesco intentionally concealed that he was funding the articles because at the time of the articles he was Cool's board chairman and he was planning to immediately sell a substantial number of Cool shares that he had surreptitiously acquired and secretly held in accounts in the names of Nominee Entities.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 158.

159.     The secret funding of the promotion was facilitated by Faukovic. She forwarded the promoter's invoice for $350,000 to another Delavaco employee, copying DeFrancesco, noting that the invoice was "made out to Cool Holdings Inc. for USD $350k Delavaco is funding it."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 159 of the Complaint for its contents. Mr. DeFrancesco otherwise denies the allegations in Paragraph 159.

160.     In the same email thread, Faukovic further clarified that "I spoke to Andy [DeFrancesco] and this will be paid from [Nominee Entity] Sunnybrook Preemie Investments Inc. Canada – treated as a loan but no formal paperwork."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 160 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160.

161.    That same day, DeFrancesco authorized a $200,000 wire out of Delavaco's account into Sunnybrook's account.

**ANSWER:** To the extent Paragraph 161 of the Complaint refers to a document, Mr. DeFrancesco respectfully refers the Court to that document for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161.

162.    In addition to funneling the cash portion of the Promoter's fee through Sunnybrook, DeFrancesco also transferred 150,000 Cool shares to the promoter from another Nominee Entity, GT Capital.

**ANSWER:** To the extent Paragraph 162 of the Complaint refers to a document, Mr. DeFrancesco respectfully refers the Court to that document for its contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162.

> ### D.    *The Promotional Campaign Was Abruptly Halted, After the Promotional Articles Came to Apple's Attention.*

163.    On September 19, 2018, Apple's Legal Director for Latin America spoke with Rezk and followed up by email attaching a link to one of the promotional articles, demanding "written confirmation from Cool Holdings that Cool Holdings and its affiliates will . . . not do anything like this paid advertising again."

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163.

164.    After the call with Apple's Legal Director, Rezk emailed DeFrancesco and Diaz on September 19, 2018 stating that Cool was risking its contract with Apple "because of the paid campaign."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 164 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164.

165.    On September 21, 2018, Rezk sent Apple the requested confirmation signed by DeFrancesco, copying DeFrancesco and Diaz. No further articles were published after that date.

However, Cool did not issue any retraction or correction.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 165 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165.

166.    On September 27, 2018, Apple notified Cool by email that "Apple will not approve Reseller's requests for further expansion of its Authorized Locations [in Latin America] in view of the poor business metrics of the existing One Click stores evidenced during the last 24 months, such as . . . One Click stores [being] at 30% of the agreed business cases," and Cool utilizing 90% to 100% of its credit line "with multiple halts, affecting supply and therefore performance."

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 166 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166.

### E.    *DeFrancesco Sold More Than 500,000 Cool Shares Into the Inflated Market the Week of the Paid Promotion.*

167.    Cool's share price and trading volume jumped significantly during and following the promotional campaign. Cool's closing price, on September 14, 2018, prior to the publication of the promotional articles, was $4.5960 and the trading volume of Cool shares was 211,413.

**ANSWER:** To the extent Paragraph 167 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167.

168.    On September 17, 2018, after the publication of the fraudulent articles began, Cool's closing price jumped over 50% to $7.02 and the trading volume increased about 30-fold to 6,636,314. The closing price nearly quadrupled to $18.25 on September 21, with trading volume up 50-fold to 10,247,992, compared to the September 14 figures.

**ANSWER:** To the extent Paragraph 168 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168.

169.    The chart below illustrates the impact of DeFrancesco's paid promotion of Cool during September 2018:



**ANSWER:**    To the extent Paragraph 169 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 169.

170.    From September 17 to September 20, 2018, while the fraudulent promotion was occurring, accounts in the names of the Nominee Entities sold more than 500,000 Cool shares for proceeds of nearly $3.5 million.

**ANSWER:**    To the extent Paragraph 170 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco otherwise denies the allegations in Paragraph 170.

171.    By the end of 2018, accounts in the names of the Nominee Entities had sold about 1.6 million shares for proceeds in excess of $8 million.

**ANSWER:**    To the extent Paragraph 171 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents for their contents.  Mr. DeFrancesco

otherwise lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 171.

172.    DeFrancesco sold into the inflated market while knowingly or recklessly disregarding that there were materially misleading statements in Cool's SEC filings, and that the promotional articles that he funded were false.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 172.

## V.    Following the Promotional Campaign, Diaz and Rezk Signed More SEC Filings with Material Misstatements and Omissions.

173.    From November 2018 through May 2019, Cool continued to repeat the false and misleading statements and continued to omit information necessary to make the statements made in its SEC filings not materially misleading, including by projecting growth, including increased number of stores, and failing to disclose Cool's damaged relationship with Apple and its failure to operate existing stores profitably, while continuing to possess facts to the contrary, and despite further warnings from Apple.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 173.

174.    Cool's quarterly report on Form 10-Q for the quarter ending on September 30, 2018, filed on November 14, 2018 (the "September 2018 10-Q"), signed by Diaz, like the earlier SEC filings stated:

> Our goal in the next three (3) years is to expand our network of OneClick stores to 200 locations in Latin America, the U.S. and Canada to become one of Apple's largest retail partners. We expect that our growth will come from a combination of organic expansion on a store-by-store basis, as well as external acquisitions.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in

Paragraph 174 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph 174.

175.    The September 2018 10-Q, Cool's annual report for 2018 on Form 10-K, filed with the SEC on April 16, 2019("the 2018 Annual Report"), signed by Diaz and Rezk; and Cool's quarterly report on Form 10-Q for the period ending March 31, 2019, filed on May 15, 2019, signed by Diaz also each stated:

> a.  [T]he growth of our business is highly dependent upon our relationship with Apple in providing us with the licenses and approvals necessary to expand our footprint into various countries and regions around the world. Apple has very strict performance standards and guidelines that we must achieve and adhere to in order to be successful and continue to receive their support. Consequently, any deterioration

of our performance or failure to adhere to their guidelines could jeopardize our strategy and adversely affect our financial performance.

b.  Our sales and profitability depend in part upon opening new stores [selling Apple products] and operating them profitably . . . . If we fail to manage new store openings in a timely and cost-efficient manner, our growth or profits may decrease.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in Paragraph 175 of the Complaint for their contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175.

176.    The statements, and the SEC filings that contained these statements, were false and misleading because Cool omitted the material facts necessary in order to make the statements not misleading, including that:

a.  Apple had halted Cool's Latin American expansion in January 2018, and this remained in effect;

b.  Cool had already failed to adhere to Apple's guidelines, and Cool's failure, repeatedly, to adhere to these guidelines was not merely a theoretical possibility;

c.  Cool was unprofitable and had been continually underfunded with dire cash positions and financing prospects;

a.  d. Contrary to Cool's purported expansion plans, Cool did not have a license from Apple to operate in Canada, and had no concrete U.S. expansion plans.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 176.

177.    At the time that Diaz signed each of these SEC filings, he was aware and understood the dire significance of Apple's halt on Cool's Latin American expansion. Diaz was also aware that public disclosure of this fact by Cool could be critically damaging for the company and its stock price. Moreover, Diaz knew that Cool had already failed to meet Apple's performance requirements, and that the existing stores were not operating profitably. Yet he knowingly signed the filings that omitted this information. Accordingly, he knew or was reckless in not knowing that the above-mentioned statements were false and misleading.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177.

178.    At the time Rezk signed the 2018 Annual Report, he also knew and understood the significance of the January 2018 halt, that Cool's growth goals were unattainable and had no basis in reality, that Cool had already failed to meet Apple's performance requirements, and that the existing stores were not operating profitably. Accordingly, he knew or was reckless in not knowing

that the above-mentioned statements were false and misleading. Yet he knowingly signed the filing that omitted this information.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178.

## VI.    Rezk and Diaz Sold Cool Shares.

179.    Both Diaz and Rezk left their employment with Cool in June 2019.

**ANSWER:**  Mr. DeFrancesco admits to Paragraph 179.

180.    Diaz and Rezk sold Cool's shares between September 6, 2019 and October 23, 2019.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 180.

181.    Rezk sold approximately 777,704 Cool shares for proceeds of about $922,000.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181.

182.    Diaz sold approximately 591,034 Cool shares for proceeds of about $838,000.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182.

183.    At the time Diaz and Rezk sold Cool's shares, the company had not corrected or retracted the above-described materially false and misleading claims in the SEC filings and promotional articles, filed or disseminated while Diaz and Rezk were officers of Cool.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183.

184.    At the time Diaz and Rezk sold these Cool shares, they knew, or were reckless in not knowing, that the publicly available information about Cool, including in Cool's SEC filings was materially false and misleading.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184.

VII.     **Faukovic Sold Cool Shares.**

185.     Between June 14, 2018 and December 31, 2018, Faukovic sold at least 2,629 Cool shares for proceeds of $10,385.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 185.

186.     At the time she sold Cool shares, Faukovic was aware of Cool's precarious business relationship with Apple, including the January 2018 halt and Cool's difficulty even paying rent on its corporate offices.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 186.

187.     Faukovic was also aware that DeFrancesco paid for the fraudulent promotion in September 2018, even though the articles stated that they were funded by Cool.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187 as it pertains to Faukovic, and otherwise denies the allegations in Paragraph 187.

188.     She also knew that DeFrancesco had paid for the promotion through a Nominee Entity.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 188.

189.     Faukovic knew that DeFrancesco owned and controlled the shares in the accounts of the Nominee Entities, and throughout 2018 she assisted DeFrancesco in maintaining the fiction that he did not own shares.

**ANSWER**:  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187 as it pertains to Faukovic, and otherwise denies the allegations in Paragraph 189.

190.     Faukovic sold the Cool shares while she was aware of, and substantially assisting aspects of DeFrancesco's fraudulent scheme.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 190 as it pertains to Faukovic, and denies all remaining

allegations in Paragraph 190.

**VIII.   DeFrancesco and Catherine DeFrancesco Lied to Auditors, Aided by Faukovic.**

191.     In December 2018, Cool's auditor resigned and a new auditor was engaged in early 2019. In order to approve Cool's 2018 audit, the new auditor required documentation from Cool that DeFrancesco had no control or influence over, or beneficial ownership in, Delavaco.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 191.

192.     The auditors prepared written confirmations for both DeFrancesco and Catherine DeFrancesco to sign and sent the confirmations to a Cool officer who forwarded them to Faukovic who "has agreed to coordinate getting the signatures from both of them."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the documents referenced in

Paragraph 192 of the Complaint for their contents. Mr. DeFrancesco otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph 192.

193.     Notwithstanding DeFrancesco's complete control and influence over Delavaco, both DeFrancesco and Catherine Francesco signed the confirmations, dated March 19, 2019, stating that DeFrancesco did not have control, influence or beneficial ownership in Delavaco.

**ANSWER:** Mr. DeFrancesco respectfully refers the Court to the documents referenced in

Paragraph 193 of the Complaint for their contents, and otherwise denies the allegations in

Paragraph 193.

194.     The confirmation that Catherine DeFrancesco signed falsely represented to the auditor that:

    a.   "Andrew A. DeFrancesco ('Mr. DeFrancesco') has no ownership interest or right to obtain ownership interest in Delavaco Holdings, Inc. or any other related company that transacted business with Cool Holdings, Inc. ('The Delavaco Group')."

    b.   "Mr. DeFrancesco is not involved in the management or directorship of The Delavaco Group."

    c.   "Mr. DeFrancesco does not have the ability to influence or control the decision making of The Delavaco Group".

    d.  "Mr. DeFrancesco does not have an ability to influence or control [Catherine DeFrancesco's] decision making as it pertains to the operations The Delavaco Group."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 194 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194.

    195.    The confirmation that DeFrancesco signed falsely represented to the auditor that:

    a.  "[He has] no ownership interest or right to obtain ownership interest in Delavaco Holdings, Inc. or any other related company that transacted business with Cool Holdings, Inc. ('The Delavaco Group')."

    b.  "[He is] not involved in the management or directorship of The Delavaco Group."

    c.  "[He does] not have the ability to influence the decision making of The Delavaco Group."

    d.  "[He does] not have an ability to influence or control the decision making of Catherine DeFrancesco as it pertains to the operations of The Delavaco Group."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in Paragraph 195 of the Complaint for its contents, and otherwise denies the allegations in Paragraph 195.

    196.    Cool's auditors did not identify transactions with Delavaco as related party transactions, and these related party transactions with Delavaco were therefore not disclosed to investors, because DeFrancesco and Catherine DeFrancesco signed these false confirmations.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 196.

    197.    Faukovic assisted DeFrancesco in this deception. Faukovic, as DeFrancesco's assistant at Delavaco, knew or recklessly disregarded that DeFrancesco, and not Catherine DeFrancesco, controlled the Nominee Entities. Faukovic also knew or recklessly disregarded that DeFrancesco made all decisions for Delavaco.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 197 as it pertains to Faukovic, and otherwise denies the

allegations in Paragraph 197.

198.    Faukovic carried out DeFrancesco's instructions regarding payments from Delavaco and managed Delavaco's brokerage accounts at DeFrancesco's direction, and nonetheless arranged for DeFrancesco and Catherine DeFrancesco to sign false confirmations for the auditor, disavowing DeFrancesco's control of Delavaco.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 198 as it pertains to Faukovic, and otherwise denies the

allegations in Paragraph 198.

199.    On March 20, 2019, Cool's CFO emailed Faukovic for her help in organizing a call between the auditors and Catherine DeFrancesco regarding the confirmation that Catherine DeFrancesco had signed.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 199.

200.    On March 21, 2019, Faukovic emailed Catherine DeFrancesco, copying DeFrancesco: "the Cool auditors need to have a call with you discussing [the confirmation]. . . . It's simply confirming all the points on the document – but I can walk you through it first."

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in

Paragraph 200 of the Complaint for its contents.  Mr. DeFrancesco otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph 200.

201.    Faukovic spoke with Catherine DeFrancesco on March 22, 2019, prior to Catherine DeFrancesco's call with the auditors. Faukovic coached Catherine DeFrancesco to say that DeFrancesco had no control or influence over, or beneficial ownership in Delavaco.

**ANSWER:**  Mr. DeFrancesco respectfully refers the Court to the document referenced in

Paragraph 201 of the Complaint for its contents. Mr. DeFrancesco otherwise lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph 201.

202.    While on the call with Faukovic, Catherine DeFrancesco took notes of the points Faukovic instructed her to make on the call with the auditor including that "Andy has nothing in Delavaco Holdings"; that DeFrancesco is not involved "in anything delavaco group"; that she and DeFrancesco are divorced; and that she is president of Delavaco.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 202.

203.     While on the phone with Catherine DeFrancesco, and walking her through the upcoming call with the auditor, Faukovic emailed Catherine DeFrancesco the confirmation that she had signed, as a further reminder of the representations Catherine DeFrancesco needed to make.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 203.

204.     Faukovic knew or recklessly disregarded that these representations were false.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 204.

## IX.    DeFrancesco Offered and Sold Securities to the Public in Violation of Section 5.

205.     DeFrancesco arranged for the Nominee Entities to acquire Cool shares directly from Cool in unregistered transactions and those shares were thus "restricted," meaning that they could not be resold absent registration or pursuant to an exemption from registration.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 205.

206.     The Nominee Entities and Cool were under the common control of DeFrancesco, who was a control person of the issuer, Cool, making the shares held in the name of the Nominee Entities "control shares" as well as restricted shares.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 206.

207.     In 2018, DeFrancesco, as part of the conduct described above, used means of interstate commerce to orchestrate the offer and sale of over a million Cool shares to the public.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 207.

208.     No registration statement was filed or was in effect with the Commission for any of DeFrancesco's 2018 sales of Cool shares through the Nominee Entities.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 208.

209.     When DeFrancesco directed the sales of Cool shares from accounts held in the name of the Nominee Entities, the brokers sold for the issuer's control person in unregistered transactions in a public distribution.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 209.

210.    The brokers were underwriters, and the resulting transactions violated Section 5.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 210 as it pertains to the brokers, and otherwise denies the allegations in Paragraph 210.

211.    DeFrancesco's offers and sales through his Nominee Entities did not qualify for the registration exemption under Securities Act Section 4(a)(1), which exempts transactions by any person other than an issuer, underwriter or dealer.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 211.

212.    DeFrancesco also could not rely upon the Securities Act Rule 144 "safe harbor" exemption for sales by control persons because his sales exceeded the volume limitations of Rule 144(e).

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 212.

213.    As a Cool affiliate, under the safe harbor provisions of Rule 144, DeFrancesco was subject to a volume restriction of about 467,715 shares, based on Cool's average weekly trading volume. By selling more than 1.6 million shares from mid-September 2018 through December 2018, DeFrancesco exceeded the limit by more than 1.1 million shares.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 213.

**X.    DeFrancesco Failed to Make Required Filings with the SEC and C. DeFrancesco filed a False Schedule 13G Beneficial Ownership Report.**

*A.    DeFrancesco Failed to File Schedule 13D Beneficial Ownership Reports*

214.    DeFrancesco was legally required to file with the SEC a Schedule 13D beneficial ownership report pursuant to Section 13(d) of the Exchange Act and Rule 13d-1 thereunder to the extent he was the beneficial owner of greater than five percent of Cool's common stock.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 214.

215.    DeFrancesco, the DeFrancesco Nominees and Catherine DeFrancesco acted as a group under "common control" of DeFrancesco for purposes of acquiring, holding, and ultimately disposing of Cool shares.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 215.

216.    By no later than August 15, 2018, DeFrancesco beneficially owned, in the names

of Nominee Entities, more than 10% of Cool's outstanding shares at that time.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 216.

217.    As of September, 2018, the Nominee Entities owned more than 32% of the outstanding Cool shares.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 217.

218.    Notwithstanding DeFrancesco's control over the Nominee Entities, and the huge combined holdings of these entities, DeFrancesco failed to file a Schedule 13D with the Commission.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 218.

***B.    Catherine DeFrancesco Filed a False Schedule 13G Beneficial Ownership Report.***

219.    On September 11, 2018, Delavaco filed with the SEC a Schedule 13G beneficial ownership report, signed by Catherine DeFrancesco, disclosing its ownership of 650,844 shares of Cool as of August 31, 2018.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 219.

220.    That filing failed to identify, as legally required, DeFrancesco as the beneficial owner of Delavaco's Cool shares.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 220, and otherwise denies the allegations in Paragraph

220.

221.    That filing also did not identify, as legally required, other Nominee Entities—many of which were also nominally headed by Catherine DeFrancesco—that also held Cool securities, and that were under the common control of DeFrancesco.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 221, and otherwise denies the allegations in Paragraph

221.

XI.    **DeFrancesco Failed to File Beneficial Ownership Reports on Form 4 in Violation of Section 16(a) and Rule 16a-3 thereunder.**

222.    As a director of Cool, DeFrancesco was required to file reports with the Commission—including a Form 4—pursuant to Exchange Act Section 16(a) and Rule 16a-3 thereunder which require certain directors and officers, and persons who beneficially own more than 10% of a registered class of a company's equity securities, to file reports of ownership and changes in ownership with the Commission.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 222.

223.    By no later than August 15, 2018, DeFrancesco acquired more than 10% of a registered class of Cool's equity securities at least as of August 15, 2018.

**ANSWER:** To the extent Paragraph 223 of the Complaint refers to documents, Mr. DeFrancesco respectfully refers the Court to those documents. Mr. DeFrancesco otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 223.

224.    DeFrancesco failed to make the required filing on Form 4 disclosing his ownership of these shares or his sales of Cool shares through the Nominee Entities.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 224.

**FIRST CLAIM FOR RELIEF**
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)**
**(Against DeFrancesco, Diaz and Rezk)**

225.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 224 of this Complaint.

**ANSWER:** Mr. DeFrancesco realleges and incorporates by reference herein his answers to Paragraphs 1-224 of the Complaint.

226.    By engaging in the acts and conduct described in this Complaint, DeFrancesco, Diaz and Rezk, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly: (i) employed one or more devices, schemes, or artifices to defraud; (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 226.

227.     By reason of the foregoing, DeFrancesco, Diaz and Rezk, directly or indirectly, singly or in concert, violated, and unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 227.

**SECOND CLAIM FOR RELIEF**
**(Violations of Section 17(a) of the Securities Act)**
**(Against DeFrancesco)**

228.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 224 of this Complaint.

**ANSWER:**  Mr. DeFrancesco realleges and incorporates by reference herein his answers to

 Paragraphs 1-224 of the Complaint.

229.     By engaging in the acts and conduct described in this Complaint, DeFrancesco, directly or indirectly, in the offer or sale of securities and by use of the means or instruments of transportation or communication in interstate commerce or the mails: (1) knowingly or recklessly employed one or more devices, schemes, or artifices to defraud; (2) knowingly, recklessly or negligently obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (3) knowingly, recklessly or negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 229.

230.     By reason of the foregoing, DeFrancesco, directly or indirectly, violated, and unless enjoined, will continue to violate Sections 17(a)(1)-(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1)-(3)].

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 230.

**THIRD CLAIM FOR RELIEF**
**(Violations of Sections 17(a)(1) and (3) of the Securities Act)**
**(Against Diaz and Rezk)**

231.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 224 of this Complaint.

**ANSWER:**  Mr. DeFrancesco realleges and incorporates by reference herein his answers to

Paragraphs 1-224 of the Complaint.

232.    By reason of the conduct described above, Diaz and Rezk, directly or indirectly, in the offer or sale of securities and by use of the means or instruments of transportation or communication in interstate commerce or the mails: (i) knowingly or recklessly employed one or more devices, schemes, or artifices to defraud; and/or (ii) knowingly, recklessly or negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 232.

233.    By reason of the conduct described above, Diaz and Rezk, directly or indirectly, violated, and unless enjoined, will continue to violate Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 233.

## FOURTH CLAIM FOR RELIEF
### (Violations of Sections 5(a) and 5(c) of the Securities Act)
### (Against DeFrancesco)

234.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 224 of this Complaint.

**ANSWER:**  Mr. DeFrancesco realleges and incorporates by reference herein his answers to

Paragraphs 1-224 of the Complaint.

235.    DeFrancesco, directly or indirectly violated Sections 5(a) and 5(c) of the Securities Act, by: (i) making use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell such securities, through the use or medium of a prospectus or otherwise, or (ii) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale, securities as to which no registration statement was in effect; and (iii) by making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, any security as to which no registration statement had been filed.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 235.

236.    By reason of the conduct described above, DeFrancesco, directly or indirectly, violated, and unless enjoined, will continue to violate Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 236.

## FIFTH CLAIM FOR RELIEF
### (Violations of Section 13(d) of the Exchange Act and Rule 13d-1(a) Thereunder)
### (Against DeFrancesco and Catherine DeFrancesco)

237.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 224 of this Complaint.

**ANSWER:** Mr. DeFrancesco realleges and incorporates by reference herein his answers to Paragraphs 1-224 of the Complaint.

238.     During the Relevant Period, the stock of Cool was a security under Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 238.

239.     During the Relevant Period, Cool had equity securities that were registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l].

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 239.

240.     Pursuant to Section 13(d)(1) of the Exchange Act [15 U.S.C. § 78m(d)(1)] and Rule 13d-1(a) thereunder [17 C.F.R. § 240.13d-1(a)], persons who directly or indirectly acquire beneficial ownership of more than 5% of a Section 12-registered class of equity securities are required to file a Schedule 13D, or, in limited circumstances, a Schedule 13G. Section 13(d)(3) of the Exchange Act [15 U.S.C. § 78m(d)(3)] states that "act[ing] as a … group" in furtherance of acquiring, holding, or disposing of equity securities is enough to establish the group as a single "person." When a group is required to make a Schedule 13D filing, that group must "identify all members of the group."

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 240.

241.     By engaging in the acts and conduct described in this Complaint, DeFrancesco and Catherine DeFrancesco were each under an obligation to file with the Commission true and accurate reports with respect to their ownership of Cool securities, and failed to do so.

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 241.

242.     By reason of the foregoing, DeFrancesco and Catherine DeFrancesco violated, and unless enjoined, will continue to violate Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1(a) thereunder [17 C.F.R. § 240.13d-1(a)].

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 242.

### SIXTH CLAIM FOR RELIEF
**(Violations of Section 16(a) of the Exchange Act and Rule 16a-3 Thereunder)**
**(Against DeFrancesco)**

243.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 224 of this Complaint.

**ANSWER:**  Mr. DeFrancesco realleges and incorporates by reference herein his answers to

Paragraphs 1-224 of the Complaint.

244.     During the Relevant Period, the stock of Cool was each a security under Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 244.

245.     During the Relevant Period, Cool had equity securities that were registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l].

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 245.

246.     As a director of Cool and having acquired more than 10% of a registered class of Cool's equity securities, DeFrancesco failed to timely and accurately file Form 4 reports of ownership and changes of ownership with the Commission as required.

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 246.

247.     By reason of the foregoing, DeFrancesco violated, and unless enjoined, will continue to violate Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)], and Rule 16a-3 thereunder [17 C.F.R. § 240.16a-3].

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 247.

### SEVENTH CLAIM FOR RELIEF
**(Aiding and Abetting Violations of Securities Act Sections 17(a)(1) and (3)**
**(Against Diaz, Rezk and Faukovic)**

248.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 224 of this Complaint.

**ANSWER:**  Mr. DeFrancesco realleges and incorporates by reference herein his answers to Paragraphs 1-224 of the Complaint.

249.     By engaging in the acts and conduct described in the Complaint, DeFrancesco violated Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

**ANSWER:**  Mr. DeFrancesco denies the allegations in Paragraph 249.

250.     Diaz, Rezk and Faukovic knowingly or recklessly provided substantial assistance to DeFrancesco in his violations of Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 250 as it pertains to Diaz, Rezk, and Faukovic, and otherwise denies the remaining allegations in Paragraph 250.

251.     By reason of the foregoing, Diaz, Rezk and Faukovic are liable pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)] and Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] for aiding and abetting DeFrancesco's violations of Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)], and unless enjoined, will continue to aid and abet these violations.

**ANSWER:**  Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 251 as it pertains to Diaz, Rezk, and Faukovic, and otherwise denies the remaining allegations in Paragraph 251.

### EIGHTH CLAIM FOR RELIEF
**(Aiding and Abetting Violations of Exchange Act Section 10(b) and
Rules 10b-5(a) and (c) Thereunder)
(Against Diaz, Rezk and Faukovic)**

252.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 224 of this Complaint.

**ANSWER:**  Mr. DeFrancesco realleges and incorporates by reference herein his answers to Paragraphs 1-224 of the Complaint.

253.     By engaging in the acts and conduct described in the Complaint, DeFrancesco

violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

**ANSWER:** Mr. DeFrancesco denies the allegations in Paragraph 253.

254.     Diaz, Rezk and Faukovic knowingly or recklessly provided substantial assistance to DeFrancesco in his violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 254 as it pertains to Diaz, Rezk, and Faukovic, and otherwise denies the allegations in Paragraph 254.

255.     By reason of the foregoing, Diaz, Rezk and Faukovic are liable pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)] and Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] for aiding and abetting DeFrancesco's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)], and unless enjoined, will continue to aid and abet these violations.

**ANSWER:** Mr. DeFrancesco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 255 as it pertains to Diaz, Rezk, and Faukovic, and otherwise denies the remaining allegations in Paragraph 255.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

The claims in the Complaint are barred, in whole or in part, because Plaintiff has failed to plead a material misrepresentation or omission.

Dated:  May 19, 2023
New York, New York

MILBANK LLP

By:  /s/ Adam Fee
George S. Canellos
Adam J. Fee
Jeremy B. Butt
55 Hudson Yards
New York, NY 10001 /
2029 Century Park East, 33rd Fl.
Los Angeles, CA 90067
Telephone: (212) 530-5000
gcanellos@milbank.com
afee@milbank.com
jbutt@milbank
*Counsel for Andrew DeFrancesco*