UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ SECURITIES      AND      EXCHANGE         │
│ COMMISISON,                               │
│                                           │
│          Plaintiff,                       │
│                                           │
│     -v-                                   │
│                                           │
│ ANDREW    DEFRANCESCO,    MARLIO          │
│ MAURICIO DIAZ CARDONA, CARLOS             │
│ FELIPE REZK, NIKOLA FAUKOVIC,             │
│ and CATHERINE DEFRANCESCO,                │
│                                           │
│          Defendants.                      │
└─────────────────────────────────────────┘
```

23-cv-131 (JSR)

OPINION

JED S. RAKOFF, U.S.D.J.:

This is a civil securities fraud action filed by plaintiff the Securities and Exchange Commission ("SEC") against defendants Andrew DeFrancesco ("DeFrancesco"), Marlio Mauricio Diaz Cardona ("Diaz"), Carlos Felipe Rezk ("Rezk"), Nikola Faukovic, and Catherine DeFrancesco.[1] The complaint alleges that defendants, who were five insiders at Cool Holdings, Inc. ("Cool"), a publicly traded company, orchestrated a fraudulent scheme to deceive the public about Cool's operations and prospects in order to inflate Cool's stock price.

On April 5, 2023, DeFrancesco moved to dismiss Counts One and Two of the Complaint. See ECF No. 54. Count One alleges a violation

---

[1] On June 16, 2023, final judgment was entered against defendants Catherine DeFrancesco and Nikola Faukovic. See ECF Nos. 67-68.

of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5. Compl., ¶¶ 225-27. Count Two alleges a violation of Section 17(a) of the Securities Act of 1933. Id. ¶¶ 228-30. After full consideration of the parties' written submissions and oral arguments, the Court denied DeFrancesco's motion by "bottom-line order" dated May 5, 2023. Although DeFrancesco thereafter entered into a settlement with the SEC and final judgment against DeFrancesco was entered on July 5, 2023, see ECF No. 72, the Court still issues this Opinion to explain the reasoning behind its bottom-line ruling.

I.   Plaintiff's Allegations

From March 2018 to December 2018, DeFrancesco served as the chairman of Cool's board of directors. Compl. ¶¶ 2, 21. Cool was formed, as a publicly traded company, in March 2018 by the reverse merger of Cooltech Inc. and InfoSonics, Inc. Id. ¶¶ 27, 61. As of August 2018, Cool owned and operated sixteen retail stores that sold products manufactured and authorized by Apple, Inc. ("Apple"). Id. ¶¶ 3, 89. However, in 2018, Apple's relationship with Cool's predecessor, Cooltech, had deteriorated so substantially that Apple halted Cool's further expansion. Id. ¶ 58. Despite that deteriorating business relationship, Cool, between March and September 2018, filed several public documents

with the SEC that continued to paint a rosy picture of its relationship with Apple. See id. ¶ 96.

For example, on June 14, 2018, Cool issued a press release that declared that Cool had a "strong partnership with Apple®" and quoted DeFrancesco as stating that Cool "will . . . become the largest authorized reseller of Apple® products and services in the Americas." Id. ¶¶ 79-80.

Additionally, several registration statements and reports filed by Cool with the SEC, some of which were signed by DeFrancesco, declared:

> Our goal in the next three (3) years is to expand our network of OneClick stores to 200 locations in Latin America, the U.S. and Canada to become one of Apple's largest retail partners. We expect that our growth will come from a combination of organic expansion on a store-by-store basis, as well as external acquisitions.

> [T]he growth of our business is highly dependent upon our relationship with Apple in providing us with the licenses and approvals necessary to expand our footprint into various countries and regions around the world. Apple has very strict performance standards and guidelines that we must achieve and adhere to in order to be successful and continue to receive their support. Consequently, any deterioration of our performance or failure to adhere to their guidelines could jeopardize our strategy and adversely affect our financial performance.

> Our sales and profitability depend in part upon opening new stores [selling Apple products] and operating them profitably . . . . If we fail to manage new store openings in a timely and cost-efficient manner, our growth or profits may decrease.

> Id. ¶¶ 97-98.

The SEC alleges that these statements were false and misleading. Id. ¶ 99. In particular, these statements failed to disclose that Apple's relationship with Cool had already substantially deteriorated and that this was because Cool had failed to meet Apple's requirements to such a point that Apple had halted Cool's further expansion in Latin America (a primary prospective market). Ibid.

In addition to the misleading statements and omissions that Cool made in the foregoing documents, the SEC further alleges that DeFrancesco personally orchestrated a "pump-and-dump" scheme. This scheme is alleged to have had three phases: DeFrancesco's accumulation of shares, the fraudulent promotion of Cool stock, and the sale of Cool stock.

**Phase 1: Stock Accumulation**. The SEC claims that DeFrancesco covertly acquired more than 1.6 million shares of Cool shares, accounting for over 32% of Cool's outstanding stock. Id. ¶¶ 6-7. Allegedly, DeFrancesco acquired these shares through nominee entities (the "Nominee Entities"), controlled by him but held in the names of his ex-wife (defendant Catherine DeFrancesco) and other family members. Id. ¶¶ 6, 103-05, 112-13, 119. DeFrancesco failed to disclose his purchases of Cool stock, allegedly in violation of regulatory requirements, and he also falsely represented that he had no control over one of the Nominee Entities. Id. ¶¶ 114-20, 191-96.

**Phase 2: Fraudulent Promotion**. The SEC further alleges that DeFrancesco funded and participated in a campaign that fraudulently promoted Cool between June 2018 and September 2018 in order to inflate Cool's stock price. Id. ¶ 127-62. DeFrancesco allegedly hired the promoter of Cool and received the articles that the promoter publicized. Id. ¶¶ 128, 136, 147, 149-50. The articles allegedly made false and misleading representations, such as statements regarding Cool's receipt of a "$900 Million Opportunity from Apple," the revenue per square foot of Cool's stores, and the future expansion of the number of Cool stores selling Apple products. Id. ¶¶ 151-57. The SEC alleges that after the fraudulent promotional campaign, Cool's stock price increased. Id. ¶ 168.

**Phase 3: The Stock Sales**. Between September 17, 2018 and September 20, 2018, DeFrancesco is alleged to have sold more than 500,000 Cool shares through the Nominee Entities' brokerage accounts for proceeds of nearly $3.5 million. Id. ¶¶ 5, 170. Additionally, DeFrancesco is alleged to have arranged for sales of over 1 million shares of the Nominee Entities' Cool stock. Id. ¶¶ 171-72, 205-07.

Based on the foregoing, the SEC claims that DeFrancesco: violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, promulgated thereunder, as well as Section 17(a) of the Securities Act of 1933 by "knowingly or recklessly

employ[ing] one or more devices, schemes, or artifices to defraud;
knowingly, recklessly or negligently obtain[ing] money or property
by means of one or more untrue statements of a material fact or
omissions of a material fact necessary in order to make the
statements made, in the light of the circumstances under which
they were made, not misleading; and/or knowingly, recklessly or
negligently engag[ing] in one or more transactions, practices, or
courses of business which operated or would operate as a fraud or
deceit upon the purchaser" of Cool securities. Id. ¶¶ 225-30.

## II. Discussion

To survive a motion to dismiss for failure to state a claim,
a complaint must include "sufficient factual matter, accepted as
true, to state a claim to relief that is plausible on its face."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2] A complaint must
offer more than "a formulaic recitation of the elements of a cause
of action," or "naked assertion[s]" devoid of "further factual
enhancement." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
555, 557 (2007). If the plaintiff has "not nudged [its] claims
across the line from conceivable to plausible, their complaint
must be dismissed." Id. at 570.

Additionally, securities fraud claims under Section 10(b) and
17(a) are subject to the heightened pleading standards of Federal

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks,
alterations, footnotes, and citations.

Rule of Civil Procedure 9(b). See Sec. & Exch. Comm'n v. Thompson, 238 F. Supp. 3d 575, 591 (S.D.N.Y. 2017). Accordingly, to a state a claim for a violation of Section 10(b) and 17(a), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In particular, the Second Circuit has interpreted Rule 9(b) to require that a complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004).

In his motion filed April 5, 2023, DeFrancesco argues that the Complaint should be dismissed on four grounds. The Court addresses each in turn.

### a. Count One

Defendant DeFrancesco argued Count One should be dismissed because the Complaint failed to allege an actionable statement or omission. This was because the publicly-filed statements about Cool's plans for continued store expansion were either puffery or opinion, the risk disclosures in those statements were adequate, and the Complaint failed to alleged that DeFrancesco "made" or "disseminated" any misleading statements in the promotional articles allegedly circulated as part of his pump-and-dump scheme.

i. <u>Puffery or Opinion</u>

1. <u>Puffery</u>

DeFrancesco argues that the following statement is puffery:

Our goal in the next three (3) years is to expand our network of OneClick stores to 200 locations in Latin America, the U.S. and Canada to become one of Apple's largest retail partners. We expect that our growth will come from a combination of organic expansion on a store-by-store basis, as well as external acquisitions.

<u>See</u> Compl., ¶ 97. In general, so-called "puffery" is non-actionable because it "encompasses statements that are too general to cause a reasonable investor to rely upon them." <u>In re Vivendi, S.A. Sec. Litig.</u>, 838 F.3d 223, 245 (2d Cir. 2016); <u>ECA, Loc. 134 IBEW Joint Pension Tr. Of Chi. v. JP Morgan Chase Co.</u>, 553 F.3d 187, 206 (2d Cir. 2009). DeFrancesco argues that the statement about Cool's expansion plans was too general and aspirational to be regarded as anything but puffery. <u>See, e.g.</u>, <u>Schiro v. Cemex, S.A.B. de C.V.</u>, 396 F. Supp. 3d 283, 298 (S.D.N.Y. 2019).

But this statement about store expansion directly "contradict[ed] facts that [we]re known to" DeFrancesco and was thus not puffery. <u>See</u> <u>In re Virtus Inv. Partners, Inc. Sec. Litig.</u>, 195 F. Supp. 3d 528, 537 (S.D.N.Y. 2016). <u>Accord</u> <u>Novak v. Kasaks</u>, 216 F.3d 300, 315 (2d Cir. 2000). The Complaint adequately alleged that by the time that Cool voiced its aspiration to expand to "200 locations" and "become one of Apple's largest retail partners," DeFrancesco already knew that Apple had imposed a halt on Cool's

further expansion, which would render Cool's stated goal impossible. Compl., ¶¶ 58, 71-76, 85-86, 95-99, 101. Despite DeFrancesco's argument that the Complaint only alleges a temporary "halt" from Apple that, if lifted, would have permitted Cool to meet its goals for growth, the Complaint pleads several facts establishing that the halt was not fleeting but was rather a persistent ban based on Cool's repeated failure to meet Apple's expectations. Id. ¶¶ 64-94. The allegations in the Complaint adequately plead that DeFrancesco knew the halt was not temporary, rendering Cool's stated expansion goals impossible.

## 2. Opinion

In the alternative, DeFrancesco argues that the statement about Cool's expansion plans is a non-actionable opinion because it states a corporate expectation concerning future performance or growth. See Shreiber v. Synacor, Inc., 832 F. App'x 54, 57 (2d Cir. 2020). However, the Complaint adequately alleges facts that show the statement falls within one of the Omnicare exceptions to the general rule that opinions are non-actionable. See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 186-95 (2015).

Under Omnicare, a statement of opinion may be actionable if either: (1) the speaker does not honestly hold the stated opinion; (2) the opinion includes an "embedded statement of fact" that is

false; or (3) the opinion omits to state facts necessary to make its statement of opinion not misleading. Omnicare, 575 U.S. at 184-93.

The statement about Cool's growth plans satisfies the first disjunctive prong of Omnicare. As explained above, the Complaint adequately alleged that DeFrancesco could not have genuinely believed that he expected Cool to expand to 200 further locations and become Apple's leading retail partner, because he already knew that Apple had prohibited Cool from expanding to other locations. See Compl., ¶¶ 58, 71-76, 84-86, 96-99, 101. The statement is thus not a non-actionable opinion.

### ii. Risk Disclosure

The Complaint alleges that DeFrancesco is liable for signing registration statements filed with the SEC that inadequately disclosed risk factors. The registration statements said:

> Apple has very strict performance standards and guidelines that we must achieve and adhere to in order to be successful and continue to receive their support. Consequently, any deterioration of our performance or failure to adhere to their guidelines could jeopardize our strategy and adversely affect our financial performance.

> If we fail to manage new store openings in a timely and cost-efficient manner, our growth or profits may decrease.

Compl., ¶ 97.

DeFrancesco argues that these risk disclosures were sufficient as a matter of law, because they disclosed that the

deterioration of Cool's relationship with Apple and/or Cool's failure to manage new stores operations were substantial risks, and they concerned risks that had not already occurred. See e.g., Chapman v. Mueller Water Prods., Inc., 466 F. Supp. 3d 382, 406 n.6 (S.D.N.Y. 2020); Ulbricht v. Ternium S.A., 18-cv-6801, 2020 WL 5517313, at *9 (E.D.N.Y. Sept. 14, 2020).

But the risks here are couched as if they are future possibilities, when in fact they were already realized facts. "A generic warning of a risk will not suffice when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability." Meyer v. Jinkosolar Holdings Co., Ltd., 761 F.3d 245, 251 (2d Cir. 2014); In re Prudential Sec. Inc. Ltd. P'ships Litig., 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (Pollack, J.) (One may not "warn[] his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away."); In re Van der Moolen Holding N.V. Sec. Litig., 405 F. Supp. 2d 388, 400 (S.D.N.Y. 2005). Cool's generic warnings that it might fail to meet Apple's standards or fail to open new stores as rapidly as expected were insufficient because, as the Complaint adequately alleges, DeFrancesco already knew that Cool had violated Apple's performance standards and that Apple had halted Cool's further expansion. Compl., ¶¶ 58-59, 64-77, 84-87, 92-99, 101. The

Complaint thus adequately pleads the SEC's allegation that Cool's risk disclosures were insufficient.

### iii. Making or Disseminating the Articles

In his motion to dismiss, DeFrancesco further argued that Count One must be dismissed because the SEC had failed to allege that he "made" or "disseminated" any misleading statements in promotional articles circulated as part of his alleged pump-and-dump scheme. DeFrancesco further averred that the Complaint fails to allege that he had any authority over the articles.

It is true that only the "maker" of a false or misleading statement may be liable under Rule 10-b5(b). See Janus Cap. Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 141 (2011); McIntire v. China MediaExpress Holdings, Inc., 927 F. Supp. 2d 105, 136-38 (S.D.N.Y. 2013) (applying Janus to Section 10(b)). The maker of a statement "is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." Janus, 564 U.S. at 142. However, the Complaint does not attempt to hold DeFrancesco liable as the maker of misrepresentations in Cool's promotional articles, so DeFrancesco's argument is effectively irrelevant.

What the Complaint does allege is that DeFrancesco participated in -- indeed, orchestrated -- a fraudulent pump and dump scheme. DeFrancesco argues that this claim should be dismissed

because the SEC has failed to allege that DeFrancesco did something more --beyond merely making misstatements -- which is necessary for scheme liability. "[M]isstatements and omissions can form part of a scheme liability claim, but an actionable scheme liability claim also requires something beyond misstatements and omissions, such as dissemination." Sec. & Exch. Comm'n v. Rio Tinto plc, 41 F.4th 47, 49 (2d Cir. 2022). To satisfy this requirement, the SEC must show that "defendants performed an inherently deceptive act that was distinct from an alleged misstatement: i.e., sham agreements, sham transactions, sham companies, or undisclosed payments to doctors who appeared independent." In re Turquoise Hill Res. Ltd. Sec. Litig., No. 20-cv-08585, 625 F. Supp. 3d 164, 253 (S.D.N.Y. 2022).

Here, however, the Complaint adequately alleged that DeFrancesco engaged in specific deceptive conduct in addition to the alleged misstatements. First, as part of the scheme, DeFrancesco secretly amassed 32% of Cool's outstanding stock through the Nominee Entities, which he secretly controlled and failed to disclose, in violation of the Exchange Act Sections 13(d) and 16(a) and Rules 13d-1 and 16a-3 and Rules 13d-1 and 16a-3 thereunder. Compl., ¶¶ 103-26, 214-24, 237-47. Second, to further conceal his scheme, DeFrancesco lied to Cool's auditors about his control of one of the Nominee Entities. Id. ¶¶ 191-96. Third, to pump up Cool's stock so that he could profitably sell his Cool

stock, DeFrancesco, with Diaz and Rezk, orchestrated a fraudulent promotional campaign, including by providing and approving false and misleading content for, and secretly funding, several articles that materially misrepresented Cool's business operations and prospects. Id. ¶¶ 127-62. Finally, to further conceal his scheme, DeFrancesco arranged for the unregistered (undisclosed) sales of over one million shares of the Nominee Entities' Cool stock, in violation of the Section 5 of the Securities Act. Id. ¶¶ 167-72, 205-13.

Count Two adequately states a claim for scheme liability.

III. Conclusion

For the foregoing reasons, the Court hereby confirms its prior ruling denying defendant DeFrancesco's motion to dismiss.

Dated:    New York, NY

July 20, 2023            JED S. RAKOFF, U.S.D.J.