UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISISON,

        Plaintiff,

   -v-

ANDREW DEFRANCESCO, MARLIO
MAURICIO DIAZ CARDONA, CARLOS
FELIPE REZK, NIKOLA FAUKOVIC,
and CATHERINE DEFRANCESCO,

        Defendants.

---

23-cv-131 (JSR)

<u>OPINION</u>

JED S. RAKOFF, U.S.D.J.:

    This is a civil securities fraud action filed by plaintiff the Securities and Exchange Commission ("SEC") against defendants Andrew DeFrancesco, Marlio Mauricio Diaz Cardona ("Diaz"), Carlos Felipe Rezk ("Rezk"), Nikola Faukovic, and Catherine DeFrancesco.[1] On July 5, 2023, Diaz and Rezk moved for summary judgment on all counts against them. <u>See</u> Rezk Mot. for Summ. J., ECF. No. 73; Diaz Mot. for Summ. J., ECF No. 76. After full consideration of the parties' written submissions and oral argument, the Court, by "bottom-line" order, denied defendants' motions for summary

---

[1] Final judgment has been entered against Andrew DeFrancesco, Catherine DeFrancesco, and Nikola Faukovic. <u>See</u> Final J. as to Def. Catherine DeFrancesco, ECF. No. 67; Final J. as to Def. Nikola Faukovic, ECF No. 68; Final J. as to Def. Andrew DeFrancesco, ECF No. 72.

judgment on September 11, 2023. This Opinion sets forth the reasons for that ruling.

## I.   Factual Background

Cool Holdings, Inc., a publicly traded company, operated several retail stores that resold Apple products. See Pl.'s Counterstatement of Material Facts and Statement of Additional Material Facts ("SEC 56.1 Statement"), ¶¶ 9, 12, 17-18, 24, ECF No. 90; Def. Marlio Mauricio Diaz Cardona's Rule 56.1 Statement of Undisputed Material Facts ("Diaz 56.1 Statement"), ¶¶ 12, 16, ECF No. 78.[2] Rezk was Cool's Vice Present of Marketing and a board member. SEC 56.1 Statement, ¶ 10. Diaz was Cool's President and a board member. Id. Mr. DeFrancesco was Chairman of the Board. Id.

In 2017, as a result of financial and inventory issues, Cool began experiencing problems in its business relationship with Apple. Id. ¶¶ 59-65. By January 2018, Cool's relationship with Apple had deteriorated so dramatically that Apple halted Cool's continued expansion of its stores. Id. ¶¶ 19, 67-69.[3] This strained business relationship (and Cool's financial difficulties)

---

[2] Rezk and Diaz submitted identical Rule 56.1 Statements. Compare Diaz 56.1 Statement with Def. Carlos Felipe Rezk's 56.1 Statement of Undisputed Material Facts ("Rezk 56.1 Statement"), ECF No. 75. Therefore, any citation to one statement below should be considered to include the parallel citation to the other statement.

[3] A key factual dispute between the parties is the scope of this halt. See Diaz 56.1 Statement, ¶ 19; SEC 56.1 Statement, ¶¶ 19, 69.

continued throughout 2018. SEC 56.1 Statement, ¶¶ 71-74, 76-81, 91-94. Cool made late payments to Apple, struggled to pay rent, and failed to meet Apple's business metrics. Id. ¶¶ 71-81, 91-94. Additionally, Rezk and Diaz tried, but failed, to get Apple to lift the halt on Cool's expansion. Id. ¶¶ 82-90.

Despite these persistent difficulties, Cool's SEC filings failed to disclose its financial problems or the halt that Apple had imposed on its continued expansion. Instead, Cool's SEC filings[4] made the following statements:

> Our goal in the next three (3) years is to expand our network of OneClick stores to 200 locations in Latin America, the U.S. and Canada to become one of Apple's largest retail partners. We expect that our growth will come from a combination of organic expansion on a store-by-store basis, as well as external acquisitions.

> [T]he growth of our business is highly dependent upon our relationship with Apple in providing us with the licenses and approvals necessary to expand our footprint into various countries and regions around the world. Apple has very strict performance standards and guidelines that we must achieve and adhere to in order to be successful and continue to receive their support. Consequently, any deterioration of our performance or failure to adhere to their guidelines could jeopardize our strategy and adversely affect our financial performance.

> Our sales and profitability depend in part upon opening new stores [selling Apple products] and operating them

---

[4] The SEC contends these statements were contained in three Form 10-Qs that Diaz signed, and were "incorporated by reference into Cool's Registration Statement, filed on June 15, 2018, signed by both Diaz and Rezk." SEC 56.1 Statement, ¶¶ 95-97; Pl. Ex. 57.017, ECF No. 95-7. As defendants point out, the SEC mistakenly cited to two Form 10-Qs from 2019; however, defendants do not dispute these statements were contained in a Form 10-Q from March 31, 2018. See Def. Ex. 28, ECF No. 82-13; Diaz 56.1 Statement, ¶¶ 25, 28.

profitably. . . . If we fail to manage new store openings in
a timely and cost-efficient manner, our growth or profits may
decrease.

See SEC 56.1 Statement, ¶ 96.

The SEC contends these statements were false and misleading.
When these statements were made, Diaz and Rezk knew the halt on
Cool's expansion was still in place. Id. ¶¶ 67-70, 82-90. See Pl.
Ex. 25, ECF No. 93-9 (a July 16, 2018 email from Rezk to DeFrancesco
and Diaz lists "[o]ur expansion plan is on hold" as an "issue[]"
Cool was facing). In addition, by August 2018, Cool only operated
16 stores, Cool's internal projections only forecasted 59, not
200, stores, and Cool never actually had a license from Apple to
operate stores in Canada. Diaz 56.1 Statement, ¶ 24, SEC 56.1
Statement, ¶ 98(d),(f); Pl. Ex. 10, ECF No. 92-9; Pl. Ex. 51, ECF
No. 95-1; Def. Ex. 1 at 188:2-17, ECF No. 81-1 ("Q: And did Apple
ever approve Cool's expansion into Canada? A: No."). Furthermore,
by this point, Cool had already failed (and continued to fail) to
adhere to Apple's performance guidelines. SEC 56.1 Statement,
¶ 98(b); Pl. Ex. 11, ECF No. 92-10 (January 17, 2018 email from an
Apple executive stating "expansion has been halted until
performance of the existing stores reach the approved business and
plan metrics"); Pl. Ex. 21, ECF No. 93-5 (June 13, 2018 email from
an Apple executive stating "there is progress made, but yet far
from reaching the proposed 'Business Plans' metrics").

In addition to these alleged misstatements, there was, according to the SEC, a broader fraudulent scheme afoot at Cool. Specifically, the SEC contends that there is evidence of a pump-and-dump scheme that involved Diaz and Rezk:

The first part of the scheme was hiring stock promoters to circulate articles containing false statements about Cool's prospects. In June 2018, Cool hired Ty Hoffer to market Cool's stock. SEC 56.1 Statement, ¶¶ 31, 122-25; Diaz 56.1 Statement, ¶ 31; Def. Ex. 32, ECF No. 83-2. Diaz signed the contract that Cool entered into with Hoffer's company, and Rezk handled certain payments that were made to Hoffer and reviewed Hoffer's work product, SEC 56.1 Statement, ¶¶ 122-23; Def. Ex. 2 at 199:1-20, ECF No. 81-2; Pl. Ex. 23, ECF No. 93-7; Pl. Ex. 24, ECF No. 93-8. On July 10, 2018, Hoffer published an article containing statements that the SEC contends were false. The article stated that Cool "plans to open seven more new stores in the coming year in different cities across Argentina," Pl. Ex. 52, ECF No. 95-2, but there is evidence that there was no basis for that statement, Def. Ex. 2 at 206:13-207:10 ("Q: Do you know of any basis for that statement? A: No, I don't recall that."); SEC 56.1 Statement, ¶ 124. That same article also stated Cool's business model following the CoolTech merger "allows for combined yields of 8% to 9%," Pl. Ex. 52, but there is evidence Cool was never actually

profitable after this acquisition, Def. Ex. 2 at 210:18-211:4; SEC 56.1 Statement, ¶ 125.

Around the same time, Cool hired James Stafford to market and promote Cool's stock, but because of objections from Diaz and Rezk about the expense of the campaign, DeFrancesco paid for Stafford's services himself. Diaz 56.1 Statement, ¶¶ 32-34; SEC 56.1 Statement, ¶¶ 34, 36-37; Pl. Ex. 69, ECF No. 95-18; Def. Ex. 30, ECF No. 82-15; Def. Ex. 35, ECF No. 83-5; Def. Ex. 39, ECF No. 83-9; Def. Ex. 41, ECF No. 83-11. Diaz was included on emails about the articles, including emails that requested his review, SEC 56.1 Statement, ¶¶ 134, 137-40, and Rezk provided Stafford with information for, and reviewed, the articles, id. ¶¶ 127-29, 137-40. In particular, Rezk provided a false figure -- that Cool's stores earned revenue of $3,750 per square foot -- that was included in Stafford's promotional articles. Id. ¶¶ 127-32, 140, 142, 144-45. This figure was also the basis of the false revenue figure of $900 million that Stafford circulated in his articles. Id. ¶¶ 140-42, 146-47. The SEC asserts that Stafford's articles were littered with other false or misleading statements. See id. ¶¶ 148-53.

While this promotional campaign was ongoing, the second part of the scheme was underway: DeFrancesco was amassing Cool shares. In May 2018, Diaz and Rezk voted in favor a debt-for-equity exchange to DeFrancesco's companies. Id. ¶ 116. From there, in

August and September, DeFrancesco continued to increase his stock holdings. Diaz 56.1 Statement, ¶ 48; SEC 56.1 Statement, ¶ 120. Once Stafford's articles were circulated, Cool's stock price skyrocketed, and DeFrancesco then sold his stock. Diaz 56.1 Statement, ¶¶ 42-45, 48. The pump-and-dump was complete.

The SEC asserts four claims against Diaz and Rezk. First, Diaz and Rezk violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Compl., ¶¶ 225-27, ECF No. 1. Second, Diaz and Rezk violated Sections 17(a)(1) and (3) of the Securities Act of 1933. Id. ¶¶ 231-33. Third, Diaz and Rezk aided and abetted DeFrancesco's violations of Sections 17(a)(1) and (3) of the Securities Act. Id. ¶¶ 248-51. Fourth, Rezk and Diaz aided and abetted DeFrancesco's violations of Section 10(b) and Rules 10b-5(a) and (c) promulgated thereunder. Id. ¶¶ 252-55.[5] On July 5, 2023, Diaz and Rezk moved for summary judgment on all four claims against them. See Rezk Mot. for Summ. J; Diaz Mot. for Summ. J.

II.  Discussion

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." Fed. R.

---

[5] The Court previously denied DeFrancesco's motion to dismiss the Section 10(b) and Section 17(a) claims against him. See 5/5/23 Order, ECF No. 60; 7/20/23 Opinion, ECF No. 88.

Civ. P. 56(a). "The moving party bears the burden to demonstrate the absence of any genuine issues of material fact." New York v. Mountain Tobacco Co., 942 F.3d 536, 541 (2d Cir. 2019).[6] If the non-movant "bear[s] the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to any absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." Aetna Life Ins. Co. v. Big Y Foods, Inc., 52 F.4th 66, 72 (2d Cir. 2022). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual interferences in favor of the party against whom summary judgment is sought." Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 242 (2d Cir. 2020).

### a. Primary Liability Claims

The SEC asserts two primary liability claims against Rezk and Diaz -- one for violating Section 10(b) and Rule 10b-5 and another

---

[6] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

for violating Section 17(a)(1) and (3). Compl., ¶¶ 225-27, 231-33. An individual violates Section 10(b) and Rule 10b-5 when that individual "has (1) made a material misrepresentation or material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." SEC v. Frohling, 851 F.3d 132, 136 (2d Cir. 2016). The elements of a Section 17(a) claim are "essentially the same" as a Section 10(b) and Rule 10b-5 claim, SEC v. Gallison, 588 F. Supp. 3d 509, 523 (S.D.N.Y. 2022), except "[s]cienter is not required to prove a defendant violated [Section 17(a)(3)]," negligence is enough, SEC v. Ginder, 752 F.3d 569, 574 (2d Cir. 2014).

As a threshold matter, defendants argue that under Section 10(b) and Section 17(a), misstatements, standing alone, are an insufficient basis for liability. Instead, the SEC must show manipulative or deceptive conduct. Defendants are correct that Sections 17(a)(1) and (3) and Rule 10b-5(a) and (c) are scheme liability provisions, and while "misstatements and omissions can form *part* of a scheme liability claim, . . . an actionable scheme liability claim also requires something *beyond* misstatements and omissions." SEC v. Rio Tinto PLC, 41 F.4th 47, 49-50 (2d Cir. 2022). However, defendants overlook that the Complaint does not just allege they violated Rule 10b-5(a) and (c); it includes an allegation that defendants engaged in behavior that would

constitute a violation of Rule 10b-5(b). <u>See</u> Compl., ¶¶ 225-27. Rule 10b-5(b) renders it unlawful "[t]o make any untrue statement of material fact or omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R § 240.10b-5(b). And violations of Rule 10b-5(b) can be proven based on misstatements alone. <u>See, e.g.</u>, <u>SEC v. Thompson</u>, 238 F. Supp. 3d 575, 591 (S.D.N.Y. 2017).

The Court accordingly will first analyze whether there are genuine disputes of material fact that defendants violated Rule 10b-5(b). Then, the Court will address whether there are genuine disputes of material fact that defendants violated the scheme liability provisions of Section 10(b), Rule 10b-5, and Section 17(a).

i.  <u>Misstatement Liability under Rule 10b-5(b)</u>

Defendants argue they are entitled to summary judgment because there is no proof of a false, actionable statement. For the reasons discussed below, there is a genuine dispute of material fact about whether defendants made actionable false or misleading statements.[7]

---

[7] Apart from the misstatements in Cool's SEC filings, the SEC argues that the statements in the allegedly fraudulent promotional articles were "made" by Diaz and Rezk "for purposes of Section 10(b) and Rule 10b-5(b) because they had authority over the content and issuance of the statements." SEC Opp. at 24, ECF No. 91.

1. <u>Expansion Goal Misstatement</u>

Diaz and Rezk argue there is no genuine dispute of material fact that the following statement in Cool's SEC filings is non-actionable:

> Our goal in the next three (3) years is to expand our network of OneClick stores to 200 locations in Latin America, the U.S. and Canada to become one of Apple's largest retail partners. We expect that our growth will come from a combination of organic expansion on a store-by-store basis, as well as external acquisitions.

<u>See</u> SEC 56.1 Statement, ¶ 96. Diaz and Rezk argue this is so for three reasons: (1) the statement is not false; (2) there was no duty to disclose the material information the SEC alleges was omitted; and (3) the statement is a non-actionable forward-looking opinion. The Court disagrees.

First, there is a genuine dispute of material fact about whether the statement is false. Defendants argue the statement cannot be false because it was based on actual business plans and conversations with Apple. <u>See</u> Diaz 56.1 Statement, ¶ 11. Furthermore, defendants argue Cool actually made strides toward achieving this stated expansion goal. <u>Id.</u> ¶¶ 24, 52-54 (detailing an expansion from 16 stores in August 2018 to 59 stores in May 2019). However, the SEC has put forward evidence that disputes

---

However, as discussed below, the Court finds there are genuine disputes of material fact about whether the statements in Cool's SEC filings are false or misleading. Therefore, the Court does not need to address this additional theory of liability to deny summary judgment to Diaz and Rezk on the SEC's Rule 10b-5(b) claim.

defendants' position. In particular, the SEC's evidence shows: (1) at the time of this misstatement, Cool had less than 17 stores; (2) in January 2018, Apple halted Cool's expansion of stores; (3) Cool consistently failed to adhere to Apple's guidelines and faced financial difficulties; (4) Cool never had a license to open or operate stores in Canada; (5) Cool lacked the funds to expand to 200 stores; (6) Cool's internal plans only projected that Cool would open 59 stores; and (7) Cool only added the 43 stores, that defendants contend show Cool was making strides toward achieving its goal, in September 2019 <u>after</u> defendants' had left the company. SEC 56.1 Statement, ¶¶ 19, 23-24, 26, 51-53, 69-94, 98; Pl. Ex. 10, Pl. Ex. 11, Pl. Ex. 21; Pl. Ex. 41, ECF No. 94-11; Pl. Ex. 51; Pl. Ex. 76.029, ECF No. 96-6; Def. Ex. 1 at 188:2-17, 289:18-21; Def. Ex. 16, ECF No. 82-1. This evidence is more than sufficient to create a genuine dispute about the falsity of this statement.

Second, defendants characterize the SEC's theory of liability as omissions-based and argue there was no duty to disclose any underlying information about Cool's operational issues. See <u>Vacold LLC v. Cerami</u>, 545 F.3d 114, 121 (2d Cir. 2008) ("an omission is actionable under the securities laws only when the [individual] is subject to a duty to disclose the omitted facts"); <u>in re Northern Telecom Ltd. Sec. Litig.</u>, 116 F. Supp. 2d 446, 459 (S.D.N.Y. 2000) ("A company is generally not obligated to disclose internal problems because the securities laws do not require management to

bury the shareholders in internal details."). However, defendants mischaracterize the SEC's theory. The SEC's theory is that this was an affirmative misstatement, not that the statement is only misleading due to omissions. See SEC Opp. at 17.

Third, defendants argue the statement is non-actionable because it is a forward-looking opinion. Defendants conflate two separate bases for finding a statement non-actionable; nevertheless, both bases fail. As this Court previously explained in its motion to dismiss opinion, under the Supreme Court's decision in Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund, 575 U.S. 175 (2015), a statement of opinion is actionable if: (1) the speaker does not honestly hold the stated opinion; (2) the opinion includes an "embedded statement[] of fact" that is false; or (3) the opinion omits facts that are necessary to make the opinion not misleading. Id. at 184-93. Here, even if the statement is an opinion, there is a genuine dispute of material fact about whether it would fall into an Omnicare exception. In particular, the SEC's evidence of Apple's halt on Cool's continued expansion, internal projections that did not forecast 200 stores, Cool's financial difficulties, and Cool's repeated failure to meet Apple's standards support an inference that defendants could not have honestly held this opinion. See SEC 56.1 Statement, ¶¶ 25, 67-76, 82-98.

Defendants' argument that this is a non-actionable forward-looking statement similarly fails. Forward-looking statements are actionable "if they are worded as guarantees or are supported by specific statements of fact, or if the speaker does not genuinely or reasonably them." In re Int'l Bus. Machs. Corp. Sec. Litig., 163 F.3d 102, 107 (2d Cir. 1998). Thus, even assuming arguendo that this is a forward-looking statement, there are, as detailed above, facts in the record creating a genuine dispute of material fact about whether defendants could genuinely or reasonably believe the statement. See SEC 56.1 Statement, ¶¶ 25, 67-76, 82-98. Furthermore, defendants' argument that it is undisputed that the "bespeaks caution" doctrine applies is without merit. There is a genuine dispute of material fact about this doctrine's applicability because the cautionary statements that defendants point to, see Diaz 56.1 Statement, ¶ 28 (citing Def. Ex. 23 at 26, ECF No. 82-8; Def. Ex. 28 at 22; Def. Ex. 62 at 29, ECF No. 84-17), do not actually disclose the halt on Cool's expansion. See Thompson, 238 F. Supp. 3d at 603 (the bespeaks caution doctrine applies "only if the speaker 'warns of the specific contingency that lies at the heart of the alleged misrepresentation'" (quoting P.Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 97 (2d Cir. 2004)).

In sum, the Court finds there are genuine disputes of material fact about whether this statement is actionable and false.

2. Risk Disclosure Misstatements

Defendants also contend the undisputed facts show the following two statements are non-actionable:

> [T]he growth of our business is highly dependent upon our relationship with Apple in providing us with the licenses and approvals necessary to expand our footprint into various countries and regions around the world. Apple has very strict performance standards and guidelines that we must achieve and adhere to in order to be successful and continue to receive their support. Consequently, any deterioration of our performance or failure to adhere to their guidelines could jeopardize our strategy and adversely affect our financial performance.

> Our sales and profitability depend in part upon opening new stores [selling Apple products] and operating them profitably. . . . If we fail to manage new store openings in a timely and cost-efficient manner, our growth or profits may decrease.

See SEC 56.1 Statement, ¶ 96.

First, defendants argue there is no dispute of material fact that these risk disclosures were accurate because they disclose future risks that Cool will face. However, defendants' argument misses the mark. "A generic warning of a risk will not suffice when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability." Meyer v. Jinkosolar Holdings Co., Ltd., 761 F.3d 245, 251 (2d Cir. 2014). In particular, "cautionary words about future risk cannot insulate from liability an issuer's failure to disclose that the risk has, in fact, materialized in the past and is virtually certain to materialize again." Set Cap. LLC v. Credit Suisse Grp., 996 F.3d

64, 85 (2d Cir. 2021). See also in re Prudential Sec. Inc. Ltd. P'ships Litig., 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (One may not "warn[] his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away."). Here, there are sufficient facts in the record to create a genuine dispute of material fact about whether these risks had already materialized: Apple had already halted Cool's expansion and Cool had already failed (and continued to fail) to meet Apple's performance standards. See SEC 56.1 Statement, ¶¶ 19-20, 59-94.

Second, relying on Regulation S-K, defendants argue that these risk factor disclosures were not required to disclose past occurrences; they only needed to disclose what may happen in the future. See Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 101 (2d Cir. 2015) (Item 303 imposes an "obligation to '[d]escribe any known trends or uncertainties . . . that the registrant reasonably expects will have a material . . . unfavorable impact on . . . revenue or income from continuing operations.'" (quoting 17 C.F.R. § 229.303(a)(3)(ii)). Since, in defendants' view, the undisputed facts show that despite operational difficulties, Apple was not on the verge of terminating its contact with Cool, the risk disclosures were appropriate. See Diaz 56.1 Statement, ¶ 54 (stating Cool's contract with Apple continued through 2022, though without any citation to factual support). Again, defendants'

argument proves too much. As the SEC correctly points out, regulations are not the only source of disclosure obligations; rather, independent of regulations, "once a company speaks on an issue or topic, there is a duty to tell the whole truth." Moab Partners, L.P. v. Macquarie Infrastructure Corp., No. 21-2524, 2022 WL 17815767, at *1 (2d Cir. Dec. 20, 2022), cert. granted sub nom., Macquarie Infrastructure, et al. v. Moab Partners, L.P., et al., No. 22-1165, 2023 WL 6319659 (U.S. Sept. 29, 2023). Couching an existing problem as a future risk violates that duty, see Meyer, 761 F.3d at 250-51, and as already explained above, there is a genuine dispute of material fact about whether the risks that defendants disclosed had already materialized.

> ii. Scheme Liability under Rule 10b-5(a), Rule 10b-5(c), Section 17(a)(1), and Section 17(a)(3)

Now, the Court will turn to the SEC's scheme liability claims. Defendants contend they are entitled to summary judgment on these claims for three reasons. First, there is no evidence they undertook manipulative or deceptive conduct apart from making alleged misstatements. Second, there is no evidence of scienter. Third, there is no evidence they participated in a fraudulent scheme. The Court addresses each argument below and finds each without merit.

1. <u>Manipulative or Deceptive Conduct</u>

Unlike the SEC's Rule 10b-5(b) claim, to prevail on a claim under the scheme liability provisions of Section 10(a) or Section 17(a), the SEC must show "something *beyond* misstatements and omissions," although "misstatements and omissions can form *part* of [the] scheme liability claim." <u>Rio Tinto</u>, 41 F.4th at 49. This means the SEC must show Diaz and Rezk "performed an inherently deceptive act that was distinct from an alleged misstatement." <u>In re Turquoise Hill Res. Ltd. Sec. Litig.</u>, 625 F. Supp. 3d 164, 253 (S.D.N.Y. 2022). This requirement can be met in a variety of ways. <u>See, e.g.</u>, <u>Rio Tinto</u>, 41 F.4th at 49 (dissemination is sufficient); <u>SEC v. Sayid</u>, No. 17 Civ. 2630, 2018 WL 357320, at *7 (S.D.N.Y. Jan. 10, 2018) (an allegation that the defendant's "opinion letters were an integral part of [another's] pump and dump scheme, and that [the defendant] knew or should have known that his false representations would be used to erroneously issue shares of [the company's] stock without restrictive legends" is sufficient). At bottom, "the SEC must only allege that [defendants] engaged in deceptive conduct that contributed to the larger scheme." <u>SEC v. Sason</u>, 433 F. Supp. 3d 496, 509 (S.D.N.Y. 2020) (finding an allegation that the defendants "condoned the creation of the falsified [company] documents and used them to facilitate the sale of [company] shares through bogus registration exemptions" was sufficient).

Defendants contend there is no evidence that they undertook any manipulative or deceptive act apart from making the alleged misstatements. That is wrong. As detailed in the factual background section of this Opinion, the SEC has put forward evidence of a pump-and-dump scheme that Diaz and Rezk contributed to by assisting with the fraudulent promotional articles that caused Cool's stock price to artificially skyrocket and by approving a debt-for-equity exchange to DeFrancesco's companies. See SEC 56.1 Statement, ¶¶ 116, 121-54. Therefore, there is more than sufficient evidence that Diaz and Rezk undertook manipulative or deceptive conduct, beyond just misstatements, for these claims to survive summary judgment.

## 2. Scienter

To show scienter, "a plaintiff must produce evidence '(1) showing that the defendants had both motive and opportunity to commit fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" Shenk v. Karmazin, 868 F. Supp. 2d 299, 305 (S.D.N.Y. 2012) (quoting ATSI Commc'ns, Inc v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007)). Here, the relevant state of mind is recklessness. Recklessness is "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." ECA, Local 134

IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d
187, 198 (2d Cir. 2009). See also SEC v. McNulty, 137 F.3d 732,
741 (2d Cir. 1998). "Actual knowledge of or conscious disregard of
numerous red flags can establish scienter." Gallison, 588 F. Supp.
3d at 523. Alleged absence of scienter is rarely an appropriate
basis for granting summary judgment. See Press v. Chem. Inv. Servs.
Corp., 166 F.3d 529, 538 (2d Cir. 1999) ("The Second Circuit has
been lenient in allowing scienter issues to withstand summary
judgment based on fairly tenuous inferences.").

Defendants argue it is undisputed that they lacked scienter
as it relates to the pump-and-dump scheme. Although defendants'
arguments somewhat diverge on this point, defendants do make three
common assertions. First, defendants argue the fact that they did
not purchase any stock to sell or actually sell any stock during
the promotional campaign means they did not have scienter. Diaz
56.1 Statement, ¶ 48. Second, defendants contend they knew nothing
about DeFrancesco's pump-and-dump scheme until after the fact.
However, the paragraph both defendants cite from their 56.1
Statements for this proposition does not exist, see Rezk Mem. of
Law in Supp. of Mot. for Summ. J. at 24 ("Rezk Mem."), ECF No. 87
(citing Rezk 56.1 Statement, ¶ 43.c); Diaz Mem. of Law in Supp. of
Mot. for Summ. J. at 23 ("Diaz Mem."), ECF No. 86 (citing Diaz
56.1 Statement, ¶ 43.c), nor does paragraph 45.c (which the Court
presumes defendants intended to cite) actually support this

factual assertion. See Diaz 56.1 Statement, ¶ 45(c); Rezk 56.1 Statement, ¶ 45(c). Third, both defendants argue they had an "anti-motive" to commit fraud because the pump-and-dump scheme resulted in Cool having to withdraw a S-3 Registration Statement that both defendants wanted to go into effect so that Cool could continue expanding its number of Apple stores. Rezk Mem. at 8; Diaz Mem. at 8; Diaz 56.1 Statement, ¶¶ 27, 47.

Defendants' arguments then somewhat diverge based on their level of participation in the fraudulent promotional article campaign. Diaz asserts there is no evidence he read or edited the fraudulent promotional articles, so he could not have the requisite scienter. Diaz 56.1 Statement, ¶¶ 39-40. Although Rezk admits to reviewing the fraudulent promotional articles and providing a false statement for the articles that a "$3,750 profit-per-square foot" figure was accurate for all of Cool's Apple stores, Rezk argues that he still had no idea a pump-and-dump scheme was afoot and thus lacked the requisite scienter. Rezk Mem. at 8-9; Def. Ex. 42, ECF No. 83-12.

Despite defendants' protestations, there is more than sufficient evidence in the record of their scienter for this issue to survive summary judgment. For starters, it is not dispositive (or even relevant) that defendants had an "anti-motive" to commit fraud. Scienter can be shown by motive and opportunity or recklessness or conscious misbehavior, see Shenk, 868 F. Supp. 2d

at 305, and, here, the requisite mental state is recklessness, <u>not</u> motive. Additionally, the SEC has put forward evidence that defendants recklessly disregarded Mr. DeFrancesco's pump-and-dump scheme, given that defendants were aware of Mr. DeFrancesco's large stock holdings, Mr. DeFrancesco's desire for a reverse merger, and his push to hire two stock promoters. <u>See</u> SEC 56.1 Statement, ¶¶ 16-17, 30-35, 100-07, 116, 121-53. Additionally, there is evidence that the promotional articles were littered with misstatements and omissions that both defendants knew or recklessly disregarded were false, due to their being included on email chains about the articles and/or their role in providing information for, reviewing, editing, and approving the articles. <u>See id.</u> ¶¶ 122-53. Finally, whether defendants sold any stock themselves during the promotional article campaign is irrelevant given the evidence that they knew the promotional articles that were part of the scheme were fraudulent and that they recklessly disregarded DeFrancesco's plans for a pump-and-dump.

### 3. <u>Participation</u>

For a defendant to be primarily liable for scheme liability, the individual must "*substantially participate*[] in a manipulative or deceptive scheme . . . intended to mislead investors." <u>SEC v. Lee</u>, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010). "Primary liability may be imposed not only on persons who made fraudulent

misrepresentations but also on those who had knowledge of the fraud and assisted in its perpetration." <u>SEC v. First Jersey Sec., Inc.</u>, 101 F.3d 1450, 1471 (2d Cir. 1996). However, a defendant who "perform[s] purely administrative duties without knowledge of the purpose of the scheme has not employed a manipulative or deceptive device." <u>SEC v. Collins & Aikman Corp.</u>, 524 F. Supp. 2d 477, 486 (S.D.N.Y. 2007).

Defendants argue it is undisputed that they did not participate in the fraudulent scheme: they did not dump any stock during the promotional article campaign, they did not help DeFrancesco trade, and they only learned of DeFrancesco's fraud after the fact.[8] Diaz 56.1 Statement, ¶¶ 45.c, 48; Rezk 56.1 Statement, ¶¶ 45.c, 48. Diaz argues his involvement with the fraudulent promotional articles was minimal, especially in light of his objection to DeFrancesco hiring of one of the stock promoters. Diaz 56.1 Statement, ¶ 34. Rezk argues his involvement with the fraudulent promotional articles also does not show participation because it was minimal and always at the direction of DeFrancesco, and because he objected to DeFrancesco's hiring of one of the stock promoters. Rezk 56.1 Statement, ¶¶ 34-35, 38.

_____

[8] As noted above, the cited paragraph of the Rule 56.1 Statement does not support the factual assertion defendants only learned of the fraud after the fact. <u>See</u> Rezk 56.1 Statement, ¶ 45.c; Diaz 56.1 Statement, ¶ 45.c.

However, defendants downplay the SEC's evidence that they did in fact substantially participate in the fraudulent scheme. The evidence details Rezk and Diaz's roles in the fraudulent promotional articles campaign -- from signing a contract, being included on emails requesting review and approval of the articles, having conversations about the articles, reviewing and approving articles that contained false or misleading statements, and even providing a false statement that was included in the articles. See SEC 56.1 Statement, ¶¶ 38-39, 45, 122-53. Nor is it dispositive that neither defendant sold any stock or directly helped DeFrancesco trade his stock, as they did participate in the fraudulent promotional article campaign that was part and parcel of the broader scheme. Thus, there are genuine disputes of material fact about the level of defendants' participation in the fraudulent scheme.

Accordingly, the Court denies defendants' summary judgment on the SEC's Rule 10b-5(a) and (c) claim and the SEC's Section 17(a)(1) and (3) claim.

### b. Secondary Liability Claims

Defendants have also moved for summary judgment on both of the aiding and abetting claims asserted against them. The first claim alleges that defendants aided and abetted DeFrancesco's primary violations of Section 17(a)(1) and (3). Compl., ¶¶ 248-

51. The second claim alleges that defendants aided and abetted DeFrancesco's primary violations of Section 10(b) and Rules 10b-5(a) and (c), promulgated thereunder. Id. ¶¶ 252-55. In essence, then, both claims allege that defendants aided and abetted DeFrancesco in orchestrating the pump-and-dump scheme.

An aiding and abetting claim has three elements: "(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." Gonnella v. United States Sec. & Exch. Comm'n, 954 F.3d 536, 550 (2d Cir. 2020). These elements are not "considered in isolation from one another," as "[s]atisfaction of the knowledge requirement will depend on the theory of primary liability, and there may be a nexus between the degree of knowledge and the requirement that the alleged aider and abettor render substantial assistance." SEC v. DiBella, 587 F.3d 553, 566 (2d Cir. 2009) (alterations adopted). "[A] high degree of knowledge may lessen the SEC's burden in proving substantial assistance, just as a high degree of substantial assistance may lessen the SEC's burden in proving scienter." SEC v. Apuzzo, 689 F.3d 204, 215 (2d Cir. 2012). Defendants contend the undisputed facts show that none of these elements is met. The Court disagrees.

First, there is a genuine dispute of material fact about whether DeFrancesco violated the securities laws' scheme liability provisions. There is evidence in the record showing that DeFrancesco was heavily involved with the fraudulent promotional articles, amassed large stock holdings, and then dumped his stocks once the fraudulent promotional articles had increased Cool's stock price. See Diaz 56.1 Statement, ¶¶ 30-41, 45, 48-49; SEC 56.1 Statement. ¶¶ 48, 100-16, 120, 126-54. Both defendants even admit that DeFrancesco acted with scienter in orchestrating the pump-and-dump scheme. See Diaz Mem. at 8; Rezk Mem. at 9.

Second, there is a genuine dispute of fact about whether defendants rendered substantial assistance. This element requires that "the defendant in some sort associate[] himself with the venture, that he participate[] in it as in something that he wished to bring about, and that he sought by his actions to make it succeed." Apuzzo, 689 F.3d at 212. However, "mere awareness and approval of a primary violation" are not enough, SEC v. Tecumseh Holdings Corp., 03-cv-5490, 2009 WL 4975263, at *5 (S.D.N.Y. Dec. 22, 2009), and inaction is normally insufficient unless "it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act," Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983).

Defendants make a cursory argument, without any citation to the record, that they did not "ma[ke] any statement to aid or

assist Mr. DeFrancesco in implementing his alleged scheme." Rezk. Mem. at 25; Diaz Mem. at 24. The record belies that assertion. Both defendants signed SEC filings containing the allegedly false statements, that are the basis for the SEC's misstatements claim, voted in favor of a debt exchange that permitted DeFrancesco (through various entities) to accumulate Cool stock, and were involved in the fraudulent promotional article campaigns. See SEC 56.1 Statement, ¶¶ 39, 45, 95-98, 116, 122-47. Further to the point, given that there is a genuine dispute of material fact about whether both defendants actively participated in the scheme sufficiently to impose primary liability (as detailed above), there is certainly a genuine dispute of material fact about whether they substantially assisted DeFrancesco in orchestrating the scheme for the purposes of imposing secondary liability.

Third, there is a genuine dispute of fact about whether defendants had the requisite knowledge. The SEC can show knowledge with evidence of "a defendant's general awareness of [his] overall role in the primary violator's illegal scheme." SEC v. China Northeast Petroleum Holdings Ltd., 27 F. Supp. 3d 379, 395 (S.D.N.Y. 2014). The SEC can also meet this requirement by showing recklessness. See SEC v Yorkville Advisors, LLC, 305 F. Supp. 3d 486, 511 (S.D.N.Y. 2018). Defendants, again, contend (without any factual support) that they knew nothing about the pump-and-dump scheme until after it was over and that they had an anti-motive to

commit fraud based on the S-3 offering. Defendants also argue their objection to the Stafford campaign shows their lack of knowledge. Diaz 56.1 Statement, ¶¶ 34, 39. For the same reasons that there was a genuine dispute of material fact about their scienter with respect to primary liability for the fraudulent scheme, there are genuine disputes of fact about their knowledge or recklessness with respect to aiding and abetting DeFrancesco's primary violation.

Accordingly, there are genuine disputes of material fact about whether defendants aided and abetted DeFrancesco's pump-and-dump scheme. The Court therefore denies summary judgment to defendants on these claims.

For all the foregoing reasons, the Court, by order dated September 11, 2023, denied defendants' motion for summary judgment.

Dated:    New York, NY

October 23, 2023          JED S. RAKOFF, U.S.D.J.